# United States Court of Appeals For The Federal Circuit

MITSUBISHI POWER AMERICAS, INC.,

*Plaintiff-Appellant,*

—v.—

UNITED STATES,

*Defendant-Appellee.*

Appeal from the United States Court of International Trade in Case No. 1:21-cv-00573-JAR, Judge Jane A. Restani

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

MATHIAS RABINOVITCH
Trial Attorney
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. No. (212) 264-0484
*Attorneys for Defendant-Appellee*

*Of Counsel*
MICHAEL ANDERSON
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: February 13, 2026

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION ...................................................................3

STATEMENT OF THE ISSUES...........................................................................3

STATEMENT OF THE CASE.............................................................................4

I.      The United States Imposes Duties on Products of China through Amendments to the Harmonized Tariff Schedule of the United States..............4

II.    Mitsubishi Imports the SCR Catalyst Blocks .........................................9

III.   The Trial Court Held that the SCR Catalyst Blocks Are Not Covered by the Exclusions from Section 301 Duties ............................................. 13

SUMMARY OF ARGUMENT............................................................................ 15

ARGUMENT ....................................................................................................... 17

I.      Standard of Review.............................................................................. 17

II.    The SCR Catalyst Blocks are Properly Classified under Subheading 8421.99.00 as Parts of Purifying Machines and Not Covered by Section 301 Exclusions ....................................................................................... 17

         A.     The SCR Catalyst Blocks Are Parts of Purifying Machines of Heading 8421 ..............................................................................20

         B.     The SCR Catalyst Blocks Are Not Catalytic Preparations of Heading 3815 and Not Covered by Section 301 Exclusions....................24

         C.     This Court Should Reject Mitsubishi's Attempt to Apply the Exclusions to a Portion of the Imported SCR Catalyst Blocks...............28

III.   Mitsubishi Has No Basis To Claim Equitable Estoppel Against the Government ......................................................................................... 30

    A.      Mitsubishi Cannot Demonstrate The Elements Of A Claim For
           Equitable Estoppel ........................................................................31

         1.     The Government Has Not Engaged In Misleading or
                Affirmative Misconduct ...................................................32

         2.     Mitsubishi Did Not Reasonably Rely on the Government's
                Actions ...........................................................................45

    B.      Equitable Estoppel Cannot Apply to Provide Mistubishi with a
           Monetary Payment in the Amount of the Duties Paid .............................48

CONCLUSION ............................................................................. 51

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. United States*,
964 F.3d 1087 (Fed. Cir. 2020) ................................................................. 17

*Bauerhin Techs. Ltd. Pshp. v. United States*,
110 F.3d 774 (Fed. Cir. 1997) .................................................................. 20

*Carl Zeiss, Inc. v. United States*,
195 F.3d 1375 (Fed. Cir. 1999) ................................................................ 19

*Doe v. United States*,
372 F.3d 1347 (Fed. Cir. 2004) ........................................................... 49, 50

*Drygel, Inc. v. United States*,
541 F.3d 1129 (Fed. Cir. 2008) ................................................................ 19

*Franklin v. United States*,
289 F.3d 753 (Fed. Cir. 2002) ............................................................. 21, 22

*Hahnenkamm, LLC v. United States*,
104 F.4th 1333 (Fed. Cir. 2024) .............................................................. 31

*Hanson v. Office of Personnel Management*,
833 F.3d 1568 (Fed. Cir. 1987) ............................................................... 40

*Heckler v. Community Health Servs.*,
467 U.S. 51 (1984) ............................................................................ 31, 45

*Henry v. United States*,
870 F.2d 634 (Fed. Cir. 1989) ............................................................ 45, 48

*INS v. Miranda*,
459 U.S. 14 (1982) ............................................................................... 32

*INS v. Pangilinan*,
486 U.S. 875 (1988) .............................................................................. 49

*Int'l Customs Prods., Inc. v. United States,*
748 F.3d 1182 (Fed. Cir. 2014) ........................................................ 17

*Keystone Auto. Operations, Inc. v. United States,*
781 F. Supp. 3d 1362 (Ct. Int'l Trade 2025) ................................... 19

*Noss Co. v. United States,*
588 F. Supp. 1408 (Ct. Int'l Trade 1984),
*aff'd,* 753 F.3d 1052 (Fed. Cir. 1985) ............................................... 21

*Office of Personnel Management v. Richmond,*
496 U.S. 414 (1990) .............................................................. 32, 48-50

*Park B. Smith, Ltd. v. United States,*
347 F.3d 922 (Fed. Cir. 2003) .......................................................... 18

*R.T. Foods, Inc. v. United States,*
757 F.3d 1349 (Fed. Cir. 2014) ........................................................ 25

*Rees v. Watertown,*
86 U.S. 107 (1874) ............................................................................ 49

*RKW Klerks Inc. v. United States,*
94 F.4th 1374 (Fed. Cir. 2024) .................................................... 18, 30

*Roche Vitamins, Inc. v. United States,*
772 F.3d 728 (Fed. Cir. 2014) .......................................................... 18

*Schweiker v. Hansen,*
450 U.S. 785 (1981) .......................................................................... 32

*StoreWALL, LLC v. United States,*
644 F.3d 1358 (Fed. Cir. 2011) ........................................................ 19

*Taylor v. McDonough,*
71 F.4th 909 (Fed. Cir. 2023) ...................................................... 48, 49

*Telebrands Corp. v. United States,*
865 F. Supp. 2d 1277 (Ct. Int'l Trade 2012),
*aff'd,* 522 F.App'x 915 (Fed. Cir. 2013) ........................................... 27

*United States v. Citroen,*
223 U.S. 407 (1912) ......................................................................... 28

*United States v. Optrex Am., Inc.,*
560 F. Supp. 2d 1326 (Ct. Int'l Trade 2008) .................................... 36

*Well Luck Co. v. United States,*
887 F.3d 1106 (Fed. Cir. 2018) ....................................................... 17

*Worthington v. Robbins,*
139 U.S. 337 (1891) .................................................................... 28, 30

*Zacharin v. United States,*
213 F.3d 1366 (Fed. Cir. 2000) ....................................................... 32

**Harmonized Tarriff Schedule Of The United States**

General Rule of Interpretation 1............................................ 18, 19, 25

General Rule of Interpretation 5 (b) .......................................... 27, 42

General Rule of Interpretation 6.................................................... 19

**Chapter 38**

Subheading 3815.19.00 ............................................................ *passim*

EN 38.15.......................................................................................... 26

**Chapter 84**

Subheading 8421.39.40.............................................................. 23, 47

Subheading 8421.39.4000............................................................... 47

Subheading 8421.99.00 ............................................................ *passim*

EN 84.21.......................................................................................... 23

**Chapter 99**

Subheading 9903.88.01 ..................................................................... 5, 13

Subheading 9903.88.03 ......................................................................... 5

Subheading 9903.88.46 .................................................................. 9, 28, 49

Subheading 9903.88.56 .................................................................. 9, 28, 49

U.S. Note 1 ............................................................................................ 5

U.S. Note 16 (n) .................................................................................. 29

U.S. Note 20 ................................................................................... 5, 6, 7

U.S. Note 20 (a) .................................................................................. 50

U.S. Note 20 (b) .................................................................................. 50

U.S. Note 20 (iii) ........................................................................... *passim*

U.S. Note 20 (yy) ........................................................................... *passim*

**Statutes**

19 U.S.C. § 1500(b), (c) ...................................................................... 12

19 U.S.C. § 1502 ................................................................................. 36

19 U.S.C. § 1514(a) ............................................................................. 44

19 U.S.C. § 2411 ................................................................................... 4

19 U.S.C. § 3004(c) ................................................................. 18, 44, 49, 50

28 U.S.C. § 1295(a)(5) ........................................................................... 3

28 U.S.C. § 1581(a) .......................................................................... 3, 13

Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418 ...... 18, 49, 50

## Regulations

19 C.F.R. § 177.1(a), (d) ............................................................................ 37

19 C.F.R. § 177.9 ..................................................................................... 37

## Federal Register

*Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
83 Fed. Reg. 28,710 (June 20, 2018) ..........................................................4, 5, 47

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
83 Fed. Reg. 47,974 (Sept. 21, 2018) ................................................. 4, 5, 42, 46

*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
84 Fed. Reg. 20,459 (May 9, 2019) .......................................................... 4, 5

*Procedures to Consider Requests for Exclusion of Particular Products from the Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
83 Fed. Reg. 32,181 (July 11, 2018) ........................................................... 5

*Procedures for Requests to Exclude Particular Products from the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
84 Fed. Reg. 29,576 (June 24, 2019) ........................................................... 6

*Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
85 Fed. Reg. 27,489 (May 8, 2020)............................................................. *passim*

*Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,
85 Fed. Reg. 48,600 (Aug. 11, 2020)..........................................................9, 33

*Adjusting Imports of Automobiles and Automobile Parts Into the United States*,
90 Fed. Reg. 14,705 (Mar. 26, 2025) .......................................................... 29

# Other Authorities

*Catalyze*, available at Merriam-Webster, https://www.merriam-webster.com/dictionary/catalyze (last visited Feb. 11, 2026); ...................................... 10

*Catalysis*, available at Merriam-Webster, https://www.merriam-webster.com/dictionary/catalysis (last visited Feb. 11, 2026) ...................................... 10

*Catalytic converter*, available at Merriam-Webster, https://www.merriam-webster.com/dictionary/catalytic-converter (last visited Feb. 11, 2026). .................... 23

CBP Ruling H311223 (Apri. 19, 2021) ............................................................. 43

U.S. Customs and Border Protection, CSMS 64384423, available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d66da7 (last visited Feb. 11, 2026) ....................................................................................... 29

U.S. Trade Representative, *Section 301 Exclusion Request Process: Filing Guidelines for Product-Specific Exclusion Requests*, USTR, available at https://ustr.gov/sites/default/files/enforcement/301Investigations/Section%20301%20Exclusion%20Request%20Guidelines.pdf ("Filing Guidelines") (last visited Feb. 11, 2026) ................................................................................................. 35-38

U.S. Patent No. 8,470,728 ............................................................................... 24

U.S. Patent No. 10,898,881 ............................................................................. 24

**STATEMENT OF RELATED CASES**

No other appeal in or from the present civil action has previously been before this or any other appellate court. The Government believes that the following actions may be directly affected by this Court's decision within the meaning of Federal Circuit Rule 47.5(b):

1. *Mitsubishi Power Americas, Inc. v. United States*, Court No. 22-00102 (Ct. Int'l Trade);

2. *Mitsubishi Power Americas, Inc. v. United States*, Court No. 22-00280 (Ct. Int'l Trade); and

3. *Mitsubishi Power Americas, Inc. v. United States*, Court No. 22-00271 (Ct. Int'l Trade).

## INTRODUCTION

This case involves the classification of, and resulting applicability of two exclusions from Section 301 duties, to Selective Catalytic Reduction (SCR) catalyst blocks imported by appellant, Mitsubishi Power Americas, Inc. (Mitsubishi). The exclusions from Section 301 duties cover plate-type supported catalysts that are classified under subheading 3815.19.00 of the Harmonized Tariff Schedule of the United States (HTSUS). The subject imports, however, are SCR catalyst blocks, not plate-type supported catalysts, and are thus properly classified under subheading 8421.99.00, as parts of purifying machines.

On appeal, Mitsubishi argues that its SCR catalyst blocks are classified under subheading 3815.19.00, HTSUS, as other catalytic preparations. But Mitsubishi distances itself from the classification question and argues alternatively that the Government should be estopped from assessing Section 301 duties.

Mitsubishi is frustrated because it imported its SCR catalyst blocks under the assumption that it had received an exclusion from paying Section 301 duties for its merchandise. But the exclusion was granted for certain plate-type supported catalysts and not blocks. Consequently, when the merchandise entered the United States, the Government assessed Section 301 duties. This outcome, however, is not a consequence of misleading or affirmative misconduct by the Government. Rather, it's the product of incorrect information being provided by Mitsubishi as part of its application.

The Section 301 exclusions that are codified in the tariff code are drafted using information submitted from the applicants making the request. This information includes the 10-digit HTSUS subheading applicable to the product requested for exclusion, the product name, description of the product, and how the product functions, among other information.

For this case, the 10-digit HTSUS subheading that Mitsubishi provided to the United States government as part of its request was not accurate for the merchandise as imported. Consequently, when this merchandise entered the United States, U.S. Customs and Border Protection (CBP) assigned a different, but correct, tariff classification for the merchandise, and, as a result, Mitsubishi did not receive the benefit of the exclusion of Section 301 duties for its merchandise. Therefore, the error rests with Mitsubishi and not the Government.

Mitsubishi argues that the United States government had a burden to ensure that the tariff classification information that Mitsubishi submitted with its exclusion request was correct. Not so. The guidelines for filing an exclusion request expressly state that the applicant must include the correct reference to the product's 10-digit HTSUS subheading in its application. And to the extent an applicant has any uncertainty as to whether the tariff classification that it includes in its request for an exclusion is correct, an administrative process exists to resolve that uncertainty—a request can be made to CBP for a ruling as to the appropriate tariff classification. Mitsubishi did not avail itself of this process, nor did it work with the United States

Trade Representative (USTR) to amend the exclusion provision, even though CBP informed Mitsubishi that its merchandise, as imported, would be classified in a provision that is not covered by an exclusion. Thus, it is unreasonable for Mitsubishi to shift these responsibilities to the United States when Mitsubishi failed in its own due diligence.

For these reasons, and those discussed below, the judgment of the trial court should be affirmed.

## STATEMENT OF JURISDICTION

Appellant Mitsubishi invoked the jurisdiction of the Court of International Trade under 28 U.S.C. § 1581(a). Appx4. The trial court entered final judgment on April 29, 2025. Appx20. Mitsubishi timely appealed. Appx29. This Court has jurisdiction under 28 U.S.C. § 1295(a)(5).

## STATEMENT OF THE ISSUES

1.      Whether the trial court correctly held that the SCR catalyst blocks are classified as "parts" of "purifying machines or apparatus" under subheading 8421.99.00, HTSUS, where the SCR catalyst blocks are integral components of a SCR system and where the SCR system is a machine that frees flue gas from harmful nitrous oxides.

2.      Whether the trial court correctly dismissed Mitsubishi's equitable estoppel claim on the basis that Mitsubishi did not demonstrate any affirmative misconduct by the Government where it the USTR issued an exclusion from Section

301 duties for plate-type supported catalysts classified under subheading 3815.19.00, as requested by Mitsubishi, and notified Mitsubishi that the scope of the exclusion would only apply to products classified in subheading 3815.19.00.

## STATEMENT OF THE CASE

I.    **The United States Imposes Duties on Products of China through Amendments to the Harmonized Tariff Schedule of the United States**

Pursuant to its authority under Section 301 of the Trade Act of 1974 (19 U.S.C. § 2411), the United States Trade Representative placed additional tariffs on certain products of the People's Republic of China (China) for imports of covered merchandise starting in July 2018. *See Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018) (covering "List 1" products, including those classified under subheading 8421.99.00, as subject to an additional 25 percent *ad valorem* rate of duty); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (covering "List 3" products, including those classified under subheading 3815.19.00, as subject to an additional 10 percent *ad valorem* rate of duty); *see also Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) (increasing the additional rate of duty for List 3 products to 25 percent *ad valorem*).

The Section 301 duties were imposed in addition to duties assessed under Chapters 1 through 97 of the HTSUS and were effectuated by amending Chapter 99 of the HTSUS. Chapter 99 provisions relate to legislation or administrative actions that temporarily modify existing tariff provisions or impose supplemental duties or import restrictions. *See* U.S. Note 1, Ch. 99, HTSUS. To impose these additional duties, including those on products classified under subheadings 8421.99.00 and 3815.19.00, the competing provisions at issue in this appeal, the USTR modified the HTSUS by inserting new subheadings in Chapter 99 and adding U.S. Note 20 to Chapter 99. The new subheadings cover "articles the product of China" that are enumerated in the new U.S. Note 20, which, in turn, subjects those articles to additional *ad valorem* duties. *See* 83 Fed. Reg. at 28,713-18 (Annex A); 83 Fed. Reg. 47,976-48,003 (Annex A); *see also, e.g.*, Subheadings 9903.88.01 & 9903.88.03, HTSUS.

The USTR also created exclusions from Section 301 duties for certain eligible merchandise. Specifically, the USTR "establish[ed] a process by which U.S. stakeholders may request that particular products classified within a . . . tariff subheading [covered by Section 301 duties] be excluded from these additional duties." *See* 83 Fed. Reg. at 28,710; 84 Fed. Reg. at 20,459; *see also Procedures to Consider Requests for Exclusion of Particular Products from the Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 32,181 (July 11, 2018) (establishing the procedures for requesting an exclusion for List 1 products); *Procedures for Requests to Exclude Particular*

*Products from the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019) (establishing similar procedures for List 3 products). The USTR required that interested persons making a request for an exclusion "specifically identify a particular product" and "provide supporting data and the rationale for the requested exclusion." 84 Fed. Reg. at 29,576. Among other items, requestors were to provide "the 10-digit HTSUS subheading applicable to the particular product requested for exclusion" and the product name, description of the product, and how the product functions. *Id.* at 29,577.

The USTR effectuated these exclusions from Section 301 duties by, again, modifying Chapter 99 to insert new subheadings and amending U.S. Note 20. These additional subheadings cover "articles the product of China . . . each covered by an exclusion granted by the [USTR]" that are listed U.S. Note 20. *See, e.g.*, *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 27,489, 27,491 (Annex) (May 8, 2020) (covering List 3 exclusions). The new notes added to U.S. Note 20 indicate that, "[p]ursuant to the product exclusion process, the [USTR] has determined that additional duties . . . shall not apply to the following particular products, which are provided for in the enumerated statistical reporting numbers." *Id.* The new notes describe a particular product and provide a statistical reporting number of the HTSUS that covers the eligible products. Thus, exclusions from Section 301 duties are specific notes added

to U.S. Note 20 of the Chapter 99 of the HTSUS. Moreover, an exclusion may not correspond to only one request. Instead, an exclusion may have been the result of multiple different requests. *See, e.g.*, 85 Fed. Reg. at 27,490 (indicating that exclusions for two subheadings covered 15 separate exclusion requests and exclusions for 144 specific product descriptions covered 179 separate exclusion requests).

Under this framework, on September 27, 2019, Mitsubishi sought two exclusions from Section 301 duties applicable to List 3 goods for products it named "Plate-Type DeNOx Supported Catalysts." Appx1013-1014, 1025-1026. The exclusion request described the product as "plate-type DeNOx supported catalysts" containing certain compounds that are "applied to a stainless steel mesh." *Id.* The request further added that the "product is imported in block module form," with the blocks each containing a certain number of catalyst units or elements. *Id.* Mitsubishi further identified subheading 3815.19.00 as applicable to the described product.

On May 4, 2020, the USTR issued letters to Mitsubishi indicating that it determined to grant the two exclusion requests. *See* Appx1023, Appx1035. The letter provided a copy of a pre-publication notice of the exclusion notice to be published in the Federal Register. *Id.* The letter further notified Mitsubishi that:

> An exclusion in response to your request has been granted by excluding from the additional tariffs products covered by a specially drafted description contained in the annex to the exclusion notice. The scope of the exclusion is governed by the scope of the 10-digit HTSUS subheadings and product descriptions in the annex to the product exclusion notice,

7

and not by the product descriptions set out in any particular
request for exclusion.

*Id.* Finally, the letter indicated that the exclusion would apply retroactively from

September 24, 2018, and through August 7, 2020. On May 8, 2020, the USTR

published the exclusion notice in the Federal Register, which was, as it relates to the

two exclusions at issue, identical to the language of the exclusions in the pre-

publication notice shared with Mitsubishi. *See Notice of Product Exclusions: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85

Fed. Reg. 27,489, 27491 (Annex) (May 8, 2020) (Exclusion Notice).

The two exclusions, as reflected in the Exclusion Notice, provide as follows:

Pursuant to the product exclusion process, the U.S. Trade
Representative has determined that the additional duties provided
for in heading 9903.88.03 or in heading 9903.88.04 shall not apply
to the following particular products, which are provided for in the
enumerated statistical reporting numbers: . . .

(19) Plate-type supported catalysts (reaction
accelerators) for reduction of nitrous oxides (NOx)
with enhanced mercury oxidation, with oxides of base
metals being the active substances, applied to a
stainless steel mesh (described in statistical reporting
number 3815.19.0000)

(20) Plate-type supported catalysts (reaction
accelerators) for reduction of nitrous oxides (NOx),
with base metals being the active substances, applied
on a titanium dioxide based ceramic material to a
stainless steel mesh (described in statistical reporting
number 3815.19.0000)

*Id.*; *see* U.S. Note 20(yy), Ch. 99, HTSUS; *see also* subheading 9903.88.46, HTSUS (covering products described in Note 20(yy)). The exclusions published in the notice were "available for any product that meets the description in the Annex, regardless of whether the importer benefitting from the product exclusion filed an exclusion request." 85 Fed. Reg. at 27,490. However, "the scope of each exclusion is governed by the scope of the product descriptions in the Annex, and not by the product descriptions found in any particular request for exclusion." *Id.* Relevant to the period at issue in this appeal, these exclusions were in effect for merchandise entered between September 24, 2018, through December 31, 2020. *See* 85 Fed. Reg. 27,489; *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020) (extending the exclusions through new U.S. Note 20(iii)); *see also* subheading 9903.88.56, HTSUS (covering products described in U.S. Note 20(iii)).

## II.    Mitsubishi Imports the SCR Catalyst Blocks

Between July 2018 and September 2020, Mitsubishi imported the SCR catalyst blocks that are at issue in this appeal. Appx2; Appx62-65. Each SCR Catalyst Block is composed of a steel block frame that holds sixteen catalyst units. Appx3; Appx172-174. Each catalyst unit is a cube-shaped frame that contains 80 catalyst elements, also referred to as catalyst plates. Appx4; Appx174. The SCR Catalyst Block also contains a protector, seal bars, spacers and a seal plate. Appx4; Appx172. The following diagram illustrates the SCR Catalyst Block:



CATALYST ELEMENT

CATALYST UNIT

BLOCK FRAME

CATALYST BLOCK

Appx174.

The catalyst elements within each catalyst unit are stainless-steel mesh plates that have been coated with a "supported catalyst material"—catalytic chemical compounds on a blended chemical support material.  Appx4; Appx1731-1732.  The active chemical compounds catalyze[1] the reaction of nitrogen oxides (NOx) with ammonia (in the presence of oxygen) to convert those compounds to nitrogen and water.  Appx 1727-1728, Appx1732; Appx1883; Appx2106.

---

[1]  To "catalyze" means to bring about the increase in the rate of a chemical reaction induced by material unchanged chemically at the end of the reaction.  *See* catalyze, Merriam-Webster, https://www.merriam-webster.com/dictionary/catalyze (last visited Feb. 11, 2026); catalysis, Merriam-Webster, https://www.merriam-webster.com/dictionary/catalysis (last visited Feb. 11, 2026).

The SCR catalyst blocks are incorporated into larger SCR systems that are part of the air quality control system (ACQS) of an industrial plant. Appx4; Appx174; Appx229-230; Appx549. The SCR system processes flue gas—exhaust gas containing nitrogen oxides and other matter—emitted from a combustion source. Appx229-230; Appx1883. The SCR system contains an inlet duct, where the flue gas enters the system, ammonia injection and gas mixing systems, SCR catalyst blocks combined to form a SCR reactor, and an outlet duct, where the processed flue gas is discharged. Appx4; Appx215-216; Appx2119-2121. As the flue gas flows through the system, ammonia is injected into the gas and is mixed with the nitrogen oxides. Appx4; Appx215-216; Appx2119-2121. Then, the flue gas flows through a SCR reactor, containing layers of the SCR catalyst blocks, where the nitrogen oxides are converted to nitrogen and water. The catalyzed flue gas is then released through the outlet duct. Appx4; Appx215-216; Appx2119-2121. The following diagram illustrates the SCR system:



Appx2176. The function of the SCR catalyst blocks in the SCR system is to convert

the harmful nitrogen oxides in flue gas to harmless nitrogen and water. Appx4;

Appx2120.

Mitsubishi imported SCR catalyst blocks from China in 96 entries made at

various ports of entry between July 2018 and September 2020. Appx32-50. CBP has

the responsibility to "fix the final classification and rate of duty" and "final amount of

duty to be paid" on imported goods. *See* 19 U.S.C. § 1500(b), (c). Here, CBP

classified the merchandise at liquidation under HTSUS subheading 8421.39.40, duty-

free, and subheading 9903.88.01, subject to 25 percent *ad valorem* duties imposed by

the USTR pursuant to Section 301. Appx2-3; Appx1102. Mitsubishi filed 29 protests

contesting the classification of the merchandise in its entries, which were denied.

Appx32-50. Mitsubishi then timely filed this action in the trial court to challenge

CBP's classification decision, arguing that the subject merchandise should be classified

under subheading 3815.19.00 and covered by the two exclusions identified above. Appx3; Appx30-31; *see* 28 U.S.C. § 1581(a).

## III. The Trial Court Held that the SCR Catalyst Blocks Are Not Covered by the Exclusions from Section 301 Duties

On the parties cross-motions for summary judgment, the trial court issued an opinion denying both motions and entering judgment declaring that the merchandise is classified under subheading 8421.99.00, duty free, and covered by secondary subheading 9903.88.01, which imposes additional 25 percent *ad valorem* duties imposed under Section 301. Appx1–20.

In support of its decision, the trial court first ascertained the undisputed material facts. Appx2–4. The trial court then held that Mitsubishi's SCR catalyst blocks are properly classified under subheading 8421.99.00, which provides for, *inter alia*, "filtering or purifying machinery and apparatus, for liquids or gases; parts thereof: . . . [p]arts: . . . [o]ther." Appx9–14. The trial court first determined that the SCR catalyst blocks are "parts" of a larger SCR system that includes SCR reactors, which themselves contain hundreds of catalyst blocks. Appx9–11. The court then, in turn, held that the SCR system is a gas purifying machine under heading 8421, under the common meaning of the term "purify," because it "causes harmful NOx to be reduced through an oxidation-reduction reaction into harmless nitrogen gas and water," essentially converting "harmful gases into harmless gases." Appx12. Thus,

the trial court concluded that the SCR catalyst blocks are classified under subheading 8421.99.00 as parts of gas purifying machines. Appx14.

Next, the trial court held that Mitsubishi's SCR catalyst blocks were not classifiable under subheading 3815.19.00, which provides for "[r]eaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included: . . . [s]upported catalysts: . . . [o]ther." Appx14–17. The court first found that the SCR Catalytic Blocks were not "catalytic preparations" because the heading does not cover supported catalysts on a mesh, as reflected by the Explanatory Notes to the HTSUS. Appx14. Nevertheless, even assuming that heading 3815 would include such products, the court held that the SCR catalyst blocks were assemblies of many components, which included supported catalysts and catalyst plates, and were thus not covered by heading 3815. Appx15. Moreover, the court held, the merchandise is "elsewhere specified or included" in heading 8421, and thus heading 3815 cannot apply. Appx15. Therefore, the court held that the SCR catalyst blocks are not eligible for the two exclusions from Section 301 duties in Notes 20(yy) and 20(iii) of Chapter 99, HTSUS, because they are not described by the terms of the exclusions nor by statistical reporting number 3815.19.0000. Appx. 14–17.

Finally, the trial court rejected Mitsubishi's argument that the doctrine of equitable estoppel requires a finding that Section 301 exclusions should nevertheless apply to the imported SCR catalyst blocks. Appx17–18. The trial court determined that Mitsubishi was on notice that its exclusions were not fully granted and that its

products were not covered by the language of the exclusions drafted by the USTR. Appx17. In addition, the court noted that, as a legal matter, the application of the exclusion is governed by the language of the exclusion, not any particular request. Appx18. Thus, the court concluded that the Government did not mislead Mitsubishi to support an equitable estoppel claim. Appx18.

Judgment entered on April 29, 2025. Appx20. This appeal followed.

## SUMMARY OF ARGUMENT

The trial court's judgment should be affirmed because the trial court did not err in interpreting the tariff provisions of headings 8421 and 3815 of the HTSUS and correctly dismissed Mitsubishi's equitable estoppel claim.

Below, we first explain why the SCR catalyst blocks are not covered by the exclusions in Notes 20(yy) and 20(iii), as correctly held by the trial court. We then address Mitsubishi's attempt to bypass the inapplicability of the exclusions through its theory of equitable estoppel. The classification of the SCR catalyst blocks underpins the trial court's decision as to Mitsubishi's estoppel claim because it demonstrates that Mitsubishi was on notice that the product exclusion would not cover SCR catalyst blocks.

The exclusions cover "plate-type supported catalysts" classified under subheading 3815.19.00, HTSUS. The trial court, however, correctly classified the SCR catalyst blocks under subheading 8421.99.00 as parts of gas purifying machines. The SCR catalyst blocks are undisputedly parts of a SCR system. The SCR system, in

turn, is a "purifying machine" of heading 8421 because it functions to remove harmful chemicals in flue gas through a catalytic chemical reaction. The SCR catalyst blocks are thus not "supported catalysts" of subheading 3815 not elsewhere specified or included in the HTSUS because they are classified in subheading 8421.99.00 and not covered by the terms of subheading 3815.19.00.

In response, Mitsubishi argues that the classification of its SCR catalyst blocks is irrelevant because it requested the product exclusions. But Mitsubishi distorts the process of obtaining an exclusion and paints a picture that the Government, through CBP or USTR, had a burden to ensure that a specific exclusion would apply to the intended product. Not so. The USTR's exclusions were grounded in Mitsubishi's request, which identified the subject merchandise as supported catalysts of heading 3815, not SCR catalyst blocks classified as parts of machinery of heading 8421. At all times, Mitsubishi was aware that the eligibility for Section 301 exclusion hinged on the scope of the 10-digit subheading it provided to the Government in its exclusion request. Given that the correct subheading and product description in the exclusion would be controlling, the burden fell on Mitsubishi to scrupulously vet the tariff provision for accuracy.

The Government did not mislead Mitsubishi, nor did its actions meet the threshold for affirmative misconduct. And given explicit statements from the Government concerning the standards governing the applicability of the exclusions,

Mitsubishi could not have reasonably relied on the Government's actions.

Accordingly, the trial court correctly rejected Mitsubishi's equitable estoppel claim.

## ARGUMENT

### I.    Standard of Review

This Court "appl[ies] the same standard employed by the [CIT] in assessing

Customs' classification determinations." *Apple Inc. v. United States*, 964 F.3d 1087, 1092

(Fed. Cir. 2020) (internal quotation marks omitted). "This court reviews the CIT's

statutory interpretation *de novo*[.]" *Int'l Customs Prods., Inc. v. United States*, 748 F.3d

1182, 1186 (Fed. Cir. 2014).

### II.    The Imported SCR Catalyst Blocks are Properly Classified Under Subheading 8421.99.00 as Parts of Purifying Machines and Not Covered by Section 301 Exclusions

Merchandise imported into the United States is classified under the provisions

of the HTSUS. It is well-established that the determination of whether a particular

product falls within a tariff classification is a two-step process: first, this Court

ascertains the meaning of terms within the relevant tariff provision, and second, this

Court determines whether the merchandise fits within those terms. *See Well Luck Co.

v. United States*, 887 F.3d 1106, 1110 (Fed. Cir. 2018) (citations omitted). When there

is no genuine dispute of material fact about the goods at issue (as is the case here),

their classification under one heading or another "collapses into a determination of

the proper meaning and scope of the HTSUS terms that, as a matter of statutory

construction, is a question of law." *RKW Klerks Inc. v. United States*, 94 F.4th 1374, 1378 (Fed. Cir. 2024) (quotation omitted).

The HTSUS "shall be considered to be [a] statutory provision[] of law for all purposes." Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1204(c)(1), 102 Stat. 1107, 1149 (19 U.S.C. § 3004(c)). The legal provisions of the HTSUS include the provisions of the HTSUS, statutory amendments to the HTSUS, and "[e]ach modification or change made to the Harmonized Tariff Schedule by the President under authority of law[.]" 19 U.S.C. § 3004(c)(1) (specifically referencing changes made pursuant to the Trade Act of 1974).

Tariff classification under the HTSUS is controlled by the General Rules of Interpretation. General Rule of Interpretation (GRI) 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." *RKW Klerks*, 94 F.4th at 1378 (quoting GRI 1). Thus, "[w]hen applying GRI 1, [a] court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading." *Id.* (quotation omitted). Section and chapter notes, in other words, "are not optional interpretive rules." *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 926 (Fed. Cir. 2003). They "are an integral part of the HTSUS" and carry "the same legal force as the text of the headings." *Roche Vitamins, Inc. v. United States*, 772 F.3d 728, 731 (Fed. Cir. 2014).

Absent contrary legislative intent, the HTSUS's terms are construed in accordance with their common and commercial meaning, which are presumed to be the same. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999); *see also Keystone Auto. Operations, Inc. v. United States*, 781 F. Supp. 3d 1362, 1373 (Ct. Int'l Trade 2025) (applying the "standard rules of tariff interpretation for the Section 301 exclusion provisions"). To "determine the common commercial meaning of a tariff term, courts may consult dictionaries, encyclopedias, scientific authorities, and other reliable information sources." *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1363 (Fed. Cir. 2011). That includes the World Customs Organization's explanatory notes to the Harmonized Tariff Schedule, which, though not binding, "are generally indicative of the proper interpretation of a tariff provision." *Drygel, Inc. v. United States*, 541 F.3d 1129, 1134 (Fed. Cir. 2008) (quotation omitted). Courts credit "the unambiguous text of relevant explanatory notes absent persuasive reasons to disregard it." *Id.*

After determining the heading under which a good is classified pursuant to GRI 1, the Court must then determine the applicable subheading pursuant to GRI 6. "[T]he classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the [preceding GRIs] on the understanding that only subheadings at the same level are comparable." GRI 6, HTSUS.

## A.  The SCR Catalyst Blocks Are Parts of Purifying Machines of Heading 8421

The trial court's holding classifying the imported SCR catalyst blocks under GRI 1 as parts of purifying machines of subheading 8421.99.00 should be affirmed because it is consistent with the plain meaning of the tariff statute and supported by the undisputed facts.  Heading 8421 coves, *inter alia*, "filtering or purifying machinery and apparatus, for liquids or gases" and "parts thereof."  Heading 8421, HTSUS.

The SCR catalyst blocks do not function independently but are incorporated into a larger SCR system.  Appx10; Appx216 ("It is important to note that the SCR catalyst is just one component of the overall SCR system. As such, it cannot function alone to promote the desired reactions.").  Relying on this Court's standard for determining whether an imported article is a "part," the trial court held that the SCR catalyst blocks were an "integral part" of the SCR system without which the SCR system "could not function as such article."  Appx10 (citing *Bauerhin Techs. Ltd. Pshp. v. United States*, 110 F.3d 774, 778–79 (Fed. Cir. 1997)).  The trial court's holding was correct.  The SCR catalyst blocks are undisputedly parts of the SCR system because the catalyst units are necessary for the SCR system to catalyze the nitrous oxides in the flue gas.  Appx10; Appx215-216.  Although the SCR catalyst blocks perform a purifying function, they can do so only as part of the SCR system.  Appx10-11 Appx2120-2122.  Critically, the ammonia injection and gas mixing systems in the larger SCR system provides compounds necessary to process the flue gas coming

from the inlet duct. Appx2120-2122. Without the SCR catalyst blocks, the SCR system could not convert the nitrous oxides contained in the flue gas to nitrogen and water. Thus, the trial correctly concluded that, as imported, the SCR catalyst blocks are not purifying "apparatus" of heading 8421 but are classified as "parts" of a SCR system. Appx10.

The trial court then correctly concluded that the SCR system were "purifying or filtering" machines, such that the SCR catalyst blocks are classified as "parts thereof" under heading 8421. Appx11-14. The trial looked to the dictionary definition of "purify" from the *Merriam-Webster Dictionary*, defining "purify" as "to free from undesirable elements." Appx 11-12. *See also Franklin v. United States*, 289 F.3d 753, 758–59 (Fed. Cir. 2002). Because the SCR system frees the flue gas from undesirable nitrous oxides, the trial court concluded that SCR System works as a purifying machine.

The trial court's analysis is correct and consistent with this Court's explanation of the term "purify" in heading 8421. In *Franklin*, this Court explained that to "purify" includes the process of "remov[ing] unwanted constituents from a substance." 289 F.3d at 758 (citing *Noss Co. v. United States*, 588 F. Supp. 1408, 1412 (Ct. Int'l Trade 1984), *aff'd*, 753 F.3d 1052 (Fed. Cir. 1985)). There, this Court held that coral sand packet "purified" a solution because it removed chlorine, bacteria, and acidity from water. *Id.* at 759 ("Because the principal use of Franklin's coral sand is to eliminate unwanted properties from water, it is properly classified under []heading

8421[.]"). The coral sand packets acted to chemically replace hydrogen ions with calcium and magnesium ions to render the water less acidic, which acted to remove chlorine and bacteria. *Id.*

Similarly, here, the principal use of the SCR system is to eliminate unwanted nitrous oxide in the flue gas. When the flue gas is passed through the SCR system, the ammonia and nitrous oxides react to the catalysts in the catalyst units to convert those gases to nitrogen gas and water through a chemical reaction. Appx217-218. Moreover, like the reaction in *Franklin*, the catalytic reaction exchanges electrons and oxygen atoms to convert the unwanted molecules present (NOx) to the desired ones (nitrogen gas and water). Appx218. Thus, the resulting gas passing through the outlet duct is free from unwanted constituents because those have been removed by a chemical process. In other words, the SCR catalyst blocks remove the harmful nitrous oxides from the flue gas.

Mitsubishi's counterarguments are unpersuasive. Mitsubishi first suggests that the nitrous oxides is "simply converted" to other molecules while somehow "remaining in the flue gas." Blue Br. 60. But as discussed above, the conversion occurring in the reduction reaction in the SCR system constitutes a purification of the flue gas because harmful nitrous oxides are removed in the process. Mitsubishi then claims that the trial court did not explain how the SCR system acts as a chemical purifier. Blue Br. 62. But the SCR catalyst blocks clearly chemically transform the

polluting nitrous oxide and the added ammonia into water and nitrogen with the aid of a catalyst. *See* Appx217 (defining the process as a "chemical reaction").

Moreover, and as the trial court correctly explained, the Explanatory Note (EN) to heading 8421 supports the conclusion that purifying machines thereof include those that perform a chemical reaction with the help of a catalyst. Appx12-13; *see also* EN 84.21. Per the EN, articles of heading 8421 include "chemical . . . purifiers for air or other gases (including catalytic converters which change carbon monoxide in the exhaust gases of motor vehicles)." EN 84.21. Catalytic converters for motor vehicles reduce the presence of harmful pollutants through a reduction-oxidation (redox) reaction, which includes the use of a reduction catalyst to transform nitrous oxides into nitrogen and water. *See* catalytic converter, Merriam-Webster, https://www.merriam-webster.com/dictionary/catalytic-converter (last visited Feb. 11, 2026). Like catalytic converters, the SCR catalyst blocks also transform, or "change" (*see* EN 84.21) nitrous oxides in the flue gas, turning it into nitrogen and water. Thus, "purifying machines" of heading 8421 include SCR catalyst blocks that convert harmful nitrous oxides to harmless nitrogen gas and water.[2]

---

[2] Mitsubishi's claim that the trial court "reached an absurd result" by classifying the merchandise in subheading 8421 wholly ignores the court's analysis. *See* Blue Br. 61-62. The trial court referred to the Explanatory Notes, which describes generally the merchandise classified under heading 8421, to explain that the tariff term "purify" includes machines that "change" matter from a harmful to a harmless one. The trial court distinguished the imported SCR catalyst blocks from catalytic converters, which are classified in subheading 8421.39.40, because "the predominant

*Continued on next page.*

23

Finally, Mitsubishi's argument is contradicted by the patents for the catalyst elements in the SCR catalyst blocks. One patent describes the catalyst as "an exhaust gas purifying catalyst" and the other describes the catalyst as one for "reduction reaction of nitrogen oxide . . . as well as a method for purifying exhaust gas." U.S. Patent No. 8,470,728; U.S. Patent No. 10,898,881. The patents' titles further include reference to the term "purify" or "purification." Appx12. By Mitsubishi's own terms, the SCR catalyst blocks "purify" flue gas through a chemical reduction reaction.

## B. The SCR Catalyst Blocks Are Not Catalytic Preparations of Heading 3815 and Not Covered by Section 301 Exclusions

The trial court further correctly determined that the SCR catalyst blocks are not classified under subheading 3815.19.00, HTSUS, and not covered by the corresponding language for the exclusions from Section 301 duties. Appx14-15. Heading 3815 covers "[r]eaction initiators, reaction accelerators and catalytic preparations, not elsewhere specified or included." Heading 3815, HTSUS. The exclusions from Section 301 duties in Notes 20(yy) and 20(iii) of Chapter 99 cover "plate-type DeNOx supported catalysts" that are "described in statistical reporting number 3815.19.0000." Notes 20(yy)(19)-(20), Ch. 99, HTSUS. To be described in

---

chemical reaction in a catalytic converter does not involve ammonia as a reactant." Appx 13. Ultimately, the trial court concluded that SCR catalyst blocks are properly classified under subheading 8421.99.00, as "parts" of purifying machines. But the trial court did not "retract" its earlier conclusion that purifying machines of heading 8421 includes those that perform a catalytic reaction. *See* Blue Br. 61.

statistical reporting number 3815.19.0000, the SCR catalyst blocks must be classified in subheading 3815.19.00, and thus in heading 3815.

As a preliminary matter, the trial court correctly held that the SCR catalyst blocks are "elsewhere specified or included" in heading 8421, precluding classification under heading 3815 by GRI 1. Appx15; *see R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1354 (Fed. Cir. 2014) (stating that a heading is a "basket provision" if it contains the terms "not elsewhere specified or included") (internal quotations and citations omitted). "[C]lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically." *R.T. Foods*, 757 F.3d at 1354. Because the SCR catalyst blocks are classified in heading 8421, they cannot be classified in heading 3815.

Nevertheless, Mitsubishi argues that its SCR catalyst blocks contain "supported catalyst plates" covered by heading 3815 that provide the essential functionality of the product and correspond to the merchandise described in the ENs to heading 3815. Blue Br. 63. Mitsubishi misses the mark. The supported catalysts form only a part of the imported merchandise. The supported catalysts identified by Mitsubishi are coated onto a stainless-steel mesh (the catalyst elements or plates), which are then incorporated into catalyst units, and then combined within a steel frame to form a SCR Catalyst Block with the use of seal bars, a protector, a seal plate, and spacers.

The SCR catalyst blocks are thus not merely "supported catalysts" but an entirely different article.[3]

The ENs also support this view. The ENs explain that "supported catalysts" of heading 3815 are generally "composed either of one or more active substances deposited on a support." EN 38.15. The "active substances" are mostly metallic compounds or mixtures, but the "support" generally "consists of alumina, carbon, silica gel, siliceous fossil meal or ceramic materials." EN 38.15. The subject merchandise contains a supported SCR catalyst, but it is coated on onto a stainless-steel mesh, which, as described above, is further incorporated into parts that then comprise the SCR catalyst blocks. But the merchandise itself is not a "supported catalyst" as described by the Explanatory Note.[4]

---

[3] Mitsubishi also argues that the trial court improperly relied on the "more than" doctrine. *See* Blue Br. 34. Mitsubishi reads too much into the trial court's language. The trial court explained that the subject merchandise is more than supported catalysts on a mesh plate because the catalyst plates are only one component of the imported SCR catalyst blocks. Appx18. Relying on foundational principles of tariff classification, the trial court held that the SCR catalyst blocks are not covered by the product description in the exclusion because they are not merely plate-type supported catalysts for reduction of nitrous oxides. The trial court did not err in its classification analysis.

[4] The trial court concluded that "supported catalysts" of heading 3815, as informed by the ENs, do not appear to cover supported catalysts that are coated on a steel plate (*i.e.,* the mesh). On that basis alone, the SCR catalyst blocks are not classified in heading 3815, and thus not classifiable in subheading 3815.19.00 nor covered by the exclusions. Even assuming, *arguendo*, as the trial court did, that the tariff term for "catalytic preparations" in heading 3815 covers plate-type supported catalysts on a mesh, the subject merchandise is still not classified in heading 3815, as explained below.

Moreover, contrary to Mitsubishi's arguments, the steel frame, protector, seal bars, seal plate, and spacers are not "miscellaneous components" that are akin to "packaging material and/or containers" nor "offer the most practical storage and ease of installation." Blue Br. 63 (citing GRI 5(b)); *see also* Blue Br. 32-33. GRI 5(b) covers packing material and containers that are not suitable for repetitive use. *See* GRI 5(b), HTSUS. In other words, packing material is disposable and is generally destroyed after use. *See Telebrands Corp. v. United States*, 865 F. Supp. 2d 1277, 1283 n.10 (Ct. Int'l Trade 2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013). These parts are neither disposed of nor destroyed. They are a far cry from packing material.

Mitsubishi even admits that the additional components "hold catalyst plates in place" so that it can "expos[e] the flue gas to the catalyst." Blue Br. 63. Indeed, these additional components are necessary parts of SCR catalyst blocks that are joined together within the SCR reactor. Certainly, the catalyst elements capture the ammonia that then chemically reacts with the nitrous oxides. But the steel frame (and sheet metal used to hold the units together) provides structural integrity to the block, without which the catalysts could not stack together within the SCR reactor. Appx174; Appx224-227. The protector, located on the inlet side, prevents damage to the catalyst elements. Appx553. And the seal bars and seal plate prevent the flue gas from avoiding the catalysts all together as it flows from inlet duct to the outlet duct. Appx554-555. Therefore, the components of the SCR catalyst blocks are all required for the product to function as a part of the SCR system.

### C. This Court Should Reject Mitsubishi's Attempt to Apply the Exclusions to a Portion of the Imported SCR Catalyst Blocks

Mitsubishi's argument asking that the exclusion provision be applied to part of its imported merchandise is without support in the law. It is axiomatic that the classification of merchandise under the HTSUS is "ascertained by an examination of the imported article itself, in the condition in which it is imported." *Worthington v. Robbins*, 139 U.S. 337, 341 (1891); *see also United States v. Citroen*, 223 U.S. 407, 415 (1912) ("The inquiry must be – [d]oes the article, as imported, fall within the description sought to be applied?"); *see also* Appx15. The articles subject to the classification question here are the SCR catalyst blocks, not the supported catalysts. To be classified under subheading 3815.19.00 (and under subheading 9903.88.46 or 9903.88.56., as products of China covered by the exclusions in U.S. Notes 20(yy) and 20(iii)), the "imported article itself" must "fall within the description" in subheading 3815.19.00. *See Citroen*, 223 U.S. at 415. As we explained above, under GRI 1 and the plain meaning of the terms in heading 3815, the SCR catalyst blocks are not "supported catalysts" of subheading 3815.19.00. The trial court thus correctly concluded that, as imported, the "SCR catalyst blocks are assemblies of all of [its] components" that, as a whole, are classified under heading 8421. Appx15.

There is no legal basis to depart from the foundational principles of tariff classification. Mitsubishi's examples of instances in which certain tariffs are applied to a part or component of an imported product are inapposite. As examples, Mitsubishi

references proclamations concerning the application of certain Section 232 duties and U.S.-Mexico-Canada Agreement (USMCA) duties. But in all these examples, the proclamation or executive order specified that a certain duty would apply to a component or material within the imported article. For example, in the context of Section 232 duties on derivative steel products, U.S. Note 16(n) to Chapter 99 provides that the additional duties "shall only apply to the declared value of the steel content of the derivative article" and such "quantity of the steel content shall be reported in kg." Note 16(n), Ch. 99, HTSUS. CBP's CSMS notice further provided reporting instructions for calculating the value of the steel content on the entry documentation. U.S Customs and Border Protection, CSMS 64384423, available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d66da7 (last visited Feb. 11, 2026). The same is true for the other proclamations cited by Mitsubishi. *See Adjusting Imports of Automobiles and Automobile Parts Into the United States*, 90 Fed. Reg. 14,705, 14,706 (Mar. 26, 2025) (explicitly stating that importers "may submit documentation . . . identifying the amount of U.S. content in each [automobile] model imported into the United States" and further defining the meaning of the term "U.S. content"); *Adjusting Imports of Copper Into the United States*, 90 Fed. Reg. 37,727, 37,729 (July 30, 2025) (stating that the "additional duties described in . . . this proclamation shall apply only to the copper content of articles subject to this proclamation" and ordering CBP to provide guidance on the process of imposing such duties).

Here, however, the USTR-modified tariff provisions concerning Section 301 duties do not provide a carve out for any component of an imported article and applies to a "product that meets the description [of the exclusion] in the [HTSUS]." *See* 85 Fed. Reg. at 27,490 (adding that the scope of the exclusion is "governed by the scope of the product descriptions in the [HTSUS]"). To determine whether an exclusion from Section 301 duties applies, this Court must determine whether the article in the condition in which it is imported is covered by the terms of the exclusions. *Worthington*, 139 U.S. at 341; *RKW Klerks*, 94 F.4th at 1378. Accordingly, Mitsubishi's alternative argument seeking to apply the exclusions to the supported catalyst component of its SCR catalyst blocks has no merit.

## III. Mitsubishi Has No Basis To Claim Equitable Estoppel Against The Government

Mitsubishi argues that the Government should be equitably estopped from assessing Section 301 duties. Blue Br. 20–52. Mitsubishi is frustrated because it requested an exclusion from Section 301 duties for its imports of SCR catalyst blocks, it imported merchandise under the assumption that the United States Government granted that request, but when the merchandise entered the United States, the Government assessed Section 301 duties. But as we explained at the outset of this brief, this is the consequence of incorrect tariff classification information being provided by Mitsubishi as part of its application for an exclusion.

Mitsubishi argues that the United States government has a burden to ensure that the tariff classification information, provided by an interested party as part of an exclusion request, is correct. Blue Br. 36-37 (arguing that CBP must conduct an administrability review for the exclusion request). But, as we explain below, no such burden exists. Rather, the guidelines for filing an exclusion request expressly state that the applicant must include the correct reference to the product's 10-digit HTSUS subheading in its application. And to the extent an applicant has any uncertainty as to whether the tariff classification that it includes in its request for an exclusion is correct, an administrative process exists to resolve that uncertainty—a request can be made to CBP for a ruling as to the appropriate tariff classification. Mitsubishi did not avail itself of this process, nor did it work with USTR to amend the exclusion provision once CBP informed it that the imported SCR catalyst blocks would be classified in a provision that is not covered by an exclusion. Thus, it is unreasonable for Mitsubishi to shift these responsibilities to the United States when Mitsubishi failed in its own due diligence.

## A. Mitsubishi Cannot Demonstrate The Elements Of A Claim For Equitable Estoppel

A traditional claim for equitable estoppel requires that the party seeking to assert it show: (a) misleading conduct or misrepresentation of fact, (b) reliance upon this conduct, and (c) material prejudice due to the reliance. *Hahnenkamm, LLC v. United States*, 104 F.4th 1333, 1348 (Fed. Cir. 2024); *see also Heckler v. Community Health*

*Servs.*, 467 U.S. 51, 60 (1984).  The Government, however, "may not be estopped on the same terms as any other litigant."  *Heckler*, 467 U.S. at 60; *see also Office of Personnel Management v. Richmond*, 496 U.S. 414, 422, 427 (1990) (noting that "not a single case has upheld an estoppel claim against the Government for the payment of money" and that the Supreme Court has "reversed every finding of estoppel that [it] has reviewed").  "[I]f equitable estoppel is available at all against the government some form of affirmative misconduct must be shown in addition to the traditional requirements of estoppel."  *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000) (citing *Richmond,* 496 U.S. at 421; *INS v. Miranda*, 459 U.S. 14, 19 (1982); *Schweiker v. Hansen*, 450 U.S. 785, 788 (1981)).  "Affirmative misconduct" is thus "a prerequisite for invoking equitable estoppel against the government."  *Id.*

### 1. The Government Has Not Engaged In Misleading or Affirmative Misconduct

The Government, through USTR and CBP, has not engaged in misleading conduct, let alone affirmative misconduct, nor has it misrepresented any fact. Mitsubishi claims that a misrepresentation occurred when the USTR issued letters "granting" Mitsubishi's exclusion request.  *See* Blue Br. 21.  Mitsubishi identifies another alleged misrepresentation, claiming that letters granting the exclusion also advised Mitsubishi that the scope of the exclusion is covered by the product description and HTSUS classification.  *See* Blue Br. 35-36.  Mitsubishi misunderstands

the legal framework for the USTR exclusion process and how exclusions are applied and administered.

*First*, the trade community is fully aware that the assessment of Section 301 duties, and relatedly, the statutory provisions that allow for the exclusion of those duties, are implemented through a modification to the tariff code and that "the scope of the product descriptions" reflected in the tariff code, itself, would govern the application of any particular exclusion. *See* 85 Fed. Reg. at 27,489 (Exclusion Notice) ("[T]he exclusions are available for any product that meets the description in the Annex. . . . [T]he scope of each exclusion is governed by the scope of the product descriptions in the Annex, and not by the product descriptions found in any particular request for exclusion."); 85 Fed. Reg. 48,601 (Extension Notice) (same). The USTR explicitly notified Mitsubishi directly of this fact in its letter:

> An exclusion in response to your request has been granted by excluding from the additional tariffs products covered by a specially drafted description contained in the annex to the exclusion notice. The scope of the exclusion is governed by *the scope of the 10-digit HTSUS subheadings* and *product descriptions* in the annex to the product exclusion notice, and *not by the product descriptions* set out in any particular request for exclusion.

*See* Appx1023, Appx1035 (emphasis added).

Mitsubishi cannot claim surprise by this standard. At all times during the exclusion process, stakeholders—including Mitsubishi—were fully aware that such exclusions would apply to *particular products* that are found to be *classified* under a

specific tariff provision of the HTSUS. The fact that the provisions of the exclusions were incorporated into the HTSUS put all importers on notice that the standard principles of tariff classification—well understood to the importing community—would govern the application of an exclusion. Thus, Mitsubishi was on notice that its imported products would be free of Section 301 duties *only if* it met the terms of the exclusion codified in the statute. There can be no affirmative government misconduct—or misrepresentation—where the Government explicitly indicates that relief from Section 301 duties is contingent on satisfying the statutory terms of the exclusion, which includes making the necessary showing of the specific tariff classification.

Further, there was nothing misleading in the letters sent by the USTR. When "granting" the exclusion request, the USTR indicated that it would issue an exclusion in response to the request. It does *not* mean that the USTR "represented" that SCR catalyst blocks would be free from Section 301 duties. *See* Blue Br. 37. The USTR made that clear when it informed Mitsubishi that the scope of the exclusion would be governed by the "scope of the 10-digit HTSUS subheadings" and by the "product descriptions" reflected in the statutory exclusion provision, and *not* by the product description set out in the request. Appx1023, Appx1035. That an exclusion request was granted does not mean that the exclusion would be limited to that merchandise, nor that it would necessarily cover a specific product imported by the requester if the product does not meet the terms of the exclusion. Mitsubishi thus cannot claim "that

it was assured, through statements made by the Government, that it would not have

to pay" Section 301 duties merely because its exclusion was granted. *See* Blue Br. 46.

*Second*, Mitsubishi misunderstands the administrative processes of USTR and

CBP in reviewing a request for an exclusion and places an illusory burden on the

agencies to ensure that a specific exclusion would apply to the intended product,

including the correctness of the HTSUS subheading submitted by Mitsubishi. Blue

Br. 36 (stating that the agencies could have rejected the applications because the

"HTSUS codes were incorrect" or "that the merchandise as described would not fall

under the given HTSUS code"). Mitsubishi extrapolates this perceived governmental

burden from the "Filing Guidelines for Product-Specific Exclusion Requests." *See*

Blue Br. 36 (citing U.S. Trade Representative, *Section 301 Exclusion Request Process: Filing*

*Guidelines for Product-Specific Exclusion Requests*, available at

https://ustr.gov/sites/default/files/enforcement/301Investigations/Section%20301

%20Exclusion%20Request%20Guidelines.pdf ("Filing Guidelines") (last visited Feb.

11, 2026)).

Specifically, Mitsubishi argues that, pursuant to the Filing Guidelines, "CBP

conducts an 'administrability review'" and that as part of this review, CBP must

confirm "'the accuracy of the HTSUS subheading cited[,]'" among other things. Blue

Br. 36-37 (quoting portions of the Filing Guidelines).

This argument is not supported by the law. Mitsubishi fails to cite any statute

or regulation that imposes a burden on the Government to confirm the accuracy of a

proposed tariff classification in Section 301 exclusion request, and Mitsubishi's argument does not reflect the reality of the review process. The information that is used to draft the exclusions for the tariff code is provided by the entities making the request, this includes "the 10-digit HTSUS subheading applicable to the particular product requested for exclusion." 84 Fed. Reg. at 29,577. Here, the 10-digit HTSUS subheading that Mitsubishi provided to the United States government as part of its request for an exclusion was not an accurate tariff classification for the merchandise that is the subject of this lawsuit. Consequently, when this merchandise entered the United States, CBP assigned a different, but correct, tariff classification for the merchandise, and, as a result, Mitsubishi did not receive the benefit of the exclusion for its merchandise. Therefore, the error rests with Mitsubishi and not the Government.

The Filing Guidelines expressly state that "[a] <u>correct</u> reference to the product's 10-digit HTSUS subheading must be included." Filing Guidelines at 2 (emphasis in original); *cf. United States v. Optrex Am., Inc.* 560 F. Supp. 2d 1326, 1339 (Ct. Int'l Trade 2008) ("[I]t is well settled that the *importer* bears responsibility for classification of its merchandise.") (citing 19 U.S.C. § 1484(a)).

To the extent an applicant has any uncertainty as to whether the tariff classification that it includes in its request for an exclusion is correct, an administrative process exists to resolve that uncertainty—a request can be made to CBP for a ruling as to the appropriate tariff classification. 19 U.S.C. § 1502 (describing "regulations

establishing procedures for the issuance of binding rulings prior to the entry of the merchandise concerned"); 19 C.F.R. § 177.1(a) (the issuance of rulings generally); 19 C.F.R. § 177.1(d)(1) (a "ruling" is a written statement "that interprets and applies the provisions of the Customs and related laws to a *specific* set of facts." (emphasis added)); 19 C.F.R. § 177.9 (a ruling "represents the official position of the Customs Service with respect to the particular transaction or issue described therein and is binding on all Customs Service personnel in accordance with the provisions of this section until modified or revoked.").

Mitsubishi did not avail itself of this process to ensure that the proposed tariff classification that it was providing to the Government as part of its exclusion request was correct. Given this failure of due diligence, Mitsubishi should not be permitted to shift the responsibility for the accuracy of the proposed tariff provision to the Government.

Mitsubishi also misinterprets the meaning of the term "administrable" as reflected in the Filing Guidelines. Filing Guidelines at 1 ("product-specific exclusion request will be considered administrable only if the product description enables [CBP] to consistently identify and correctly classify the product at the time of entry."). To vet the administrability of an exclusion request, USTR provided CBP with the language of the draft exclusions, which included only the product description and the 10-digit subheading from the tariff code. Then, CBP determined whether it would be able to "identify" imported products based only on the product description and 10-

digit subheading and "classify" that product under the exclusion. When reviewing the 10-digit subheading, CBP would essentially flag those instances to USTR where the good described in the product description could not possibly be described by the 10-digit subheading. In this respect, CBP was reviewing whether the exclusion as drafted was workable, or put another way, whether the instructions in the exclusions were clear enough to be administered procedurally.

Here, the exclusions proposed by Mitsubishi in its request covered "plate-type DeNOx supported catalysts" containing certain compounds that are "applied to a stainless steel mesh" classified under subheading 3815.19.00. During the vetting of this request, CBP found the language to be "administrable," meaning workable. Specifically, the language covered plate-type supported catalysts (reaction accelerators) that use the listed chemicals to chemically reduce nitrous oxides. The language met the parameters of the Filing Guidelines in that the product description was not based on the product's intended end-use, did not refer to trade names or colloquial terminology, did not use subjective terms, and included criteria that CBP could reasonably verify at the time of entry. *See* Filing Guidelines at 1-2. CBP did not pre-clear the classification of SCR catalyst blocks within subheading 3815.19.00. Only Mitsubishi bore the responsibility to accurately describe the merchandise it was importing and provide the "correct" reference to the product's 10-digit HTSUS subheading. *See* Filing Guidelines at 1.

Instead, in its request, Mitsubishi stated that the "product name" was "Plate-Type DeNOx Supported Catalysts" and provided subheading 3815.19.00 as the correct HTSUS item number. As noted above, that subheading covers "other" supported catalysts. *See* subheading 3815.19.00, HTSUS. The resulting exclusions thus covered "Plate-type supported catalysts (reaction accelerators) for reduction of nitrous oxides (NOx)" that are classified in subheading 3815.19.00. The Government's formulation of the exclusion was appropriately based on the request made.

Nevertheless, buried in the exclusion request are statements that the supported catalysts are imported "in block module form" and contain several catalyst elements. Not only do those descriptors fail to clearly identify the subject SCR catalyst blocks, but they conflict with the HTSUS subheading provided by plaintiff. By contrast, "plate-type supported catalysts" evidently could be classified under subheading 3815.19.00.[5] Accordingly, the Government included as the product description plate-type supported catalysts classified in subheading 3815.19.00. And on that basis, contrary to Mitsubishi's argument, there was no reason to deny Mitsubishi's exclusions. *See* Blue Br. 39. By granting the request *and* issuing the exclusions as

---

[5] Although the trial court found that "plate-type supported catalysts on a mesh" cannot be classified under subheading 3815.19.00, the trial court concluded that it "did not change the outcome of this case" and held that the SCR catalyst blocks are not classified in heading 3815 nor described by the terms of the exclusion. Appx17-18.

currently written, both CBP and the USTR "acted in full good faith on the basis of the then accepted reading of the statute [*i.e.*, subheading 3815.19.00]." *Hanson v. Office of Personnel Management*, 833 F.2d 1568, 1569 (Fed. Cir. 1987).

Thus, the resulting statutory language of the exclusion, as codified in the tariff code, makes no mention of the product as "Catalyst Blocks," nor did it describe the products as "imported in block form" or as a "block module," or otherwise state the dimensions of the product. And as the trial court correctly held, Mitsubishi was on notice that SCR catalyst blocks were not covered by the language of the product exclusion. *See* Appx17.[6] Mitsubishi cannot claim surprise by this outcome, particularly when its exclusion request allegedly sought to cover supported catalysts on a mesh "in block form," *see* Blue Br. 25-28, 30-32, but the final exclusion provision codified in the tariff code makes no mention of catalyst blocks.

In response, Mitsubishi complains that it could not have been aware that the exclusion would not apply to its imported SCR catalyst blocks. Blue Br. 37. That is entirely of its own making, including any resulting harm it claims to have suffered. As explained above, the plain language of Notes 20(yy) or 20(iii) does not cover SCR

---

[6] Mitsubishi also challenges the trial court's statement that its exclusions were "partially" granted. *See* Blue Br. 34-35. Mitsubishi overstates the significance of the trial court's remark. The exclusion request was partially granted because the exclusion covered "plate-type supported catalysts" and not the imported "SCR catalyst blocks." The supported catalyst plates within the SCR catalyst blocks may have been covered by the exclusion, but as the court correctly held, the imported SCR catalyst blocks themselves are "not covered by the language of the exclusions drafted by the USTR." Appx17.

catalyst blocks because they are not described by the statutory language in the exclusion for "plate-type supported catalysts" nor classified in subheading 3815.19.00. Further, to the extent Mitsubishi assumed that the exclusion covered SCR catalyst blocks, *see* Blue Br. 37, notwithstanding both the plain language of the exclusion notice *and* the statements by the Government that the classification of the imported merchandise would control whether it was covered by an exclusion, this misconception rests squarely with Mitsubishi. The Government never "assured" Mitsubishi that SCR Catalysts Blocks would be covered by the exclusions formulated in Notes 20(yy) and 20(iii). *See* Blue Br. 39. Nor did the Government "ma[ke] a final determination" as to the correct classification of SCR catalyst blocks. Rather, the USTR amended the HTSUS to implement certain exclusions from Section 301 duties. Further, it *explicitly* notified importers that *only* the product description and the scope of the 10-digit subheading would govern the applicability of the Section 301 exclusions. Given that the statutory language of the exclusion would govern, the onus was on Mitsubishi to fastidiously examine the language of its request and the exclusion and make sure that it was absolutely correct.[7] Therefore, the trial court correctly held that the Government did not mislead plaintiff. *See* Appx18.

---

[7] As discussed further below, Mitsubishi was on notice as early as July 3, 2019, that CBP would classify the SCR catalyst blocks under heading 8421. *See* Appx2142

*Third,* Mitsubishi implicitly concedes that the exclusions do not cover SCR catalyst blocks through its argument that its imported products are in fact plate-type supported catalysts but simply "in block form."[8] Blue Br. 32-34. Mitsubishi's argument that the components of the SCR catalyst blocks, other than the catalyst plates, are akin to packaging material is not supportable. *See* Blue Br. 28, 33-34. As discussed above, there is no reasonable basis to conclude that the additional components—*i.e.*, the steel frame, seal bars, spacers, protector, and seal plate—would be packaging material and governed by GRI 5(b). They are not "intended to hold catalyst places in place during shipping and installation," Blue Br. 32, as they are a permanent feature of the SCR catalyst blocks.

*Finally*, to the extent there was any disconnect between Mitsubishi's expectations regarding its request and the resulting statutory language for the product description in the final exclusion provision,[9] as explained by the trial court, Mitsubishi

---

[8] Mitsubishi argues that the resulting exclusion was broader than its request. Blue Br. 28. As a general matter, the USTR sought to issue narrow exclusions from Section 301 duties based on specific policy and economic factors. *See* 83 Fed. Reg. 47,974. But an exclusion for supported catalysts as opposed to SCR Catalytic Blocks is neither broader nor narrower than the other. Those would be exclusions covering totally different products.

[9] Mitsubishi complains that it would be "unreasonable" for it to have "crafted narrow, tailored applications for [its] products" only to have received an exclusion for different merchandise. Blue Br. 39; *see also* Blue Br. 28. Assuming, *arguendo*, that Mitsubishi's requests were narrow and tailored to its product, the resulting exclusion did apply to *different* merchandise. The SCR catalyst blocks are not covered by the scope of the 10-digit HTSUS subheading and are not simply "plate-type supported

*Continued on next page.*

could have sought to work with the USTR to edit the language of the exclusion. *See* Appx17. Indeed, Mitsubishi could have contacted the USTR or sought revisions to the exclusion language to cover SCR catalyst blocks. The pre-publication notice provided to Mitsubishi included USTR's contact information for any questions. In addition, the notice directed Mitsubishi to a CBP email for "specific question on *customs classification* or implementation of the product exclusions." 85 Fed. Reg. at 27,489 (emphasis added). Mitsubishi failed to avail itself of the resources provided by the Government. Nor is there evidence that Mitsubishi sought to contact CBP as to the proper classification of SCR catalyst blocks, or that it consulted customs rulings, case law, or the HTSUS when drafting the exclusion request. Indeed, in denying the protest, CBP *did* issue a ruling classifying SCR catalyst blocks under heading 8421. *See* CBP Ruling H311223 (Apr. 19, 2021), available at rulings.cbp.gov (last visited Feb. 11, 2026). That ruling referenced an earlier decision by CBP to classify similar merchandise—steel module frames containing an array of catalyst elements—under heading 8421. *Id.* (citing CBP Ruling N302483 (Feb. 11, 2019)). Had Mitsubishi sought or reviewed guidance at any point, it could have been aware that the SCR catalyst blocks—as opposed to plate-type supported catalysts—are not classifiable under heading 3815.

---

catalysts." Moreover, Mitsubishi did not "receive" an exclusion for its merchandise because the exclusions were *product* specific not *importer* specific. The resulting Chapter 99 Notes provide any party that imports covered merchandise the benefit of an exclusion from Section 301 duties.

In response, Mitsubishi claims that there was no "administrative" process to clarify (or correct) the exclusion, and thus it could not have been reasonably expected to seek any clarification. Blue Br. 53. Mitsubishi failed to even attempt to avail itself of any method to seek a change to the exclusion based on any alleged inconsistency between the exclusion request and the resulting exclusions. It is disingenuous for Mitsubishi to claim that contacting the USTR (or CBP) would have been fruitless when it never even sought to remedy any alleged error.[10]

Regardless, even if it was unclear that the exclusion did not cover SCR catalyst blocks, which it was not, this Court must interpret the HTSUS provisions, which are "statutory provisions of law for all purposes," *see* 19 U.S.C. § 3004(c)(1), as enacted or proclaimed and pursuant to the GRIs. This Court cannot, as Mitsubishi requests, rewrite those statutory tariff provisions under the guise of finding some affirmative misconduct by the Government.

---

[10] Mitsubishi claims that it availed itself of the protest mechanism to challenge liquidations. Blue Br. 53. But protests can only challenge one of the enumerated CBP *decisions* in 19 U.S.C. § 1514(a), including decisions as to the classification of merchandise. The correctness of CBP's classification decision, in turn, is governed by the HTSUS. The protest mechanism is not the proper avenue to collaterally challenge the issuance of an (allegedly) erroneous exclusion added to the Chapter 99 Notes. Plainly, Mitsubishi was on notice that, if anything, the exclusion language needed to be changed, rather than wait for CBP's classification decision. Here, Mitsubishi chose the latter, resulting in this instant litigation concerning the applicability of Notes 20(yy) and (iii) of the tariff code, as written, to the SCR catalyst blocks.

## 2. Mitsubishi Did Not Reasonably Rely on the Government's Actions

Mitsubishi then argues that it reasonably relied on the USTR letters to its detriment. *See* Blue Br. 40-46, 46-47. To prove reasonable reliance, "'the party claiming the estoppel must have relied on its adversary's conduct . . . and that reliance must have been reasonable in that the party claiming the estoppel did not know *nor should it have known* that its adversary's conduct was misleading.'" *Henry v. United States*, 870 F.2d 634, 636 (Fed. Cir. 1989) (quoting *Heckler*, 467 U.S. at 59) (emphasis in original).

Mitsubishi claims that it "rel[ied on the letters] to make choices regarding what products they will import" and that "its reliance on them is obviously reasonable." Blue Br. 45-46. As we explained above, the letters were not misleading because they faithfully explained that an exclusion, based on Mitsubishi's own description of the product and selection of the applicable HTSUS heading, was granted and would be implemented through an amendment to the HTSUS. *See* Blue Br. 46 (stating that the letters were "misleading"). The letters provided a link to a pre-publication notice with a draft of the exclusions language and explained that the scope of the exclusion would be governed by the scope of the product description and the HTSUS heading. Any reliance on the grant of its exclusion request, rather than a review of the language and HTSUS subheading in the exclusion provision as applied to the SCR catalyst blocks, was manifestly unreasonable.

This is particularly egregious given the timeline of this case—which undercuts any argument that Mitsubishi "reasonably relied" on the granting of the exclusions to its detriment. First, the entries at issue were entered between July 2018 through September 2020. Appx2; Appx32-50; *see also* Blue Br. 12. But the exclusion was only granted in May 2020. It defies logic that Mitsubishi could have "reasonably relied" on the grant of its exclusion to avoid paying Section 301 duties for any entries filed before May 2020 because merchandise classified under subheading 3815.19.00 was subject to Section 301 duties from September 24, 2018. *See* 83 Fed. Reg. 47,974. In addition, the exclusion notice indicated that the exclusion would only apply through August 7, 2020. *See* 85 Fed. Reg. at 27,489. The USTR then extended the exclusions on August 11, 2020, effective from August 7, 2020, but only until December 31, 2020. 85 Fed. Reg. at 48,600. It would only have been reasonable for Mitsubishi to conclude that the exclusions would have been in effect from the date of the pre-publication notice on May 4, 2020, until August 7, 2020, then again after August 11, 2020, through December 31, 2020. Mitsubishi has not pointed to any evidence, on the record, that it imported SCR catalyst blocks "[b]ased on the USTR letters" or that it has "changed its position for the worse in reliance on [the Government's] conduct." Blue Br. 46.

Mitsubishi claims that it suffered harm because it was "forced to pay tens of millions" of dollars in Section 301 duties. But Mitsubishi provides no support for this claim in the record.

Second, on July 3, 2019, CBP issued a notice to Mitsubishi indicating that it would change the classification of the SCR catalyst blocks to subheading 8421.39.40. Appx2142 ("Based on information provided, U.S. Customs and Border Protection has verified the classification of goods . . . described as Catalyst Blocks from China[.] Pursuant to ruling N302483, the classification of the merchandise invoiced and entered is most applicable to the following HTSUS number: 8421.39.4000"). And as Mitsubishi acknowledges, CBP then liquidated entries of SCR catalyst blocks as early as September 18, 2019, under subheading 8421.39.40, HTSUS.[11] Appx42; *see* Blue Br. 12. This was eight months before the USTR published the exclusion notice at issue, and a few days before Mitsubishi filed its exclusion request. In those months, CBP continued to classify the SCR catalyst blocks under subheading 8421.39.40, which is also subject to Section 301 duties. *See* 83 Fed. Reg. 28,710. By March 4, 2020, two months before the exclusion notice was published, Mitsubishi began filing protests challenging CBP's decision. Mitsubishi took no action to modify its request or correct the exclusion, either before or after publication, fully aware of CBP's classification decision upon liquidation. *Cf.* Blue Br. 52 (stating that "Mitsubishi had no reason to believe that there was an error [in the exclusion]"). Mitsubishi did not import fewer SCR catalyst blocks or look for alternative sources outside China, as it claims it would

---

[11] As noted by the trial court, CBP originally believed that the subject SCR catalyst blocks were classified as "catalytic converters" of subheading 8421.39.40, HTSUS. *See* Appx6-7.

have, *see* Blue Br. 47, nor did Mitsubishi seek to amend the exclusion to cover its

merchandise, either after liquidation, after the denials of its protest, after the issuance

of the CBP ruling, or at any point as far as the Government is aware. Any continued

harm suffered is of their own making. Mitsubishi thus knew, or should have known,

that it could be "liable for [] Section 301 duties imposed on the [SCR catalyst blocks],"

*see* Blue Br. 47, months before it requested the exclusion and before the exclusion was

published. *See Henry*, 870 F.2d at 636.

Irrespective of when CBP informed Mitsubishi of its classification position, as

we explained above, Mitsubishi was on notice that the applicability of the Section 301

exclusions would be contingent on the scope of the product description and the 10-

digit subheading. Given that CBP had then begun to apply the scope of the product

description and 10-digit subheading to its imported SCR catalyst blocks, and still

assessed Section 301 duties, Mitsubishi cannot show that it reasonably relied on the

USTR letters to continue to import its merchandise and pay Section 301 duties.

### B. Equitable Estoppel Cannot Apply to Provide Mitsubishi with a Monetary Payment in the Amount of the Duties Paid

Even assuming, *arguendo*, that Mitsubishi has met the standard for equitable

estoppel, which is has not, this Court cannot provide Mitsubishi with a refund of

Section 301 duties. As noted by this Court, the Supreme Court of the United States

has "establishe[d] a limit on the availability of the doctrine of equitable estoppel[.]"

*Taylor v. McDonough*, 71 F.4th 909, 925 (Fed. Cir. 2023) (citing *Richmond*, 496 U.S. 414).

In *Richmond*, the Supreme Court held that "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized." 496 U.S. at 426 ("settl[ing] the matter of estoppel as a basis for money claims against the Government"); *see also INS v. Pangilinan*, 486 U.S. 875, 883 (1988) ("Courts of equity can no more disregard statutory . . . provisions than can courts of law.") (citing *Rees v. Watertown*, 86 U.S. 107, 122 (1874) ("A Court of equity cannot, by avowing that there is a right but no remedy known to the law, create a remedy in violation of law.")); *Doe v. United States*, 372 F.3d 1347, 1357 (Fed. Cir. 2004) ("The Supreme Court has left no doubt that it is the duty of all courts to observe the conditions defined by Congress for charging the public treasury.") (internal quotations omitted). In interpreting *Richmond*, this Court further held that "[t]he doctrine [of equitable estoppel] therefore cannot be invoked to grant . . . [a] monetary award . . . if the 'applicable statutes' do not authorize the requested payment of money." *Taylor*, 71 F.4th at 926 (citations omitted).

The applicable statute here is the HTSUS. The HTSUS, including Chapter 99 headings and its U.S. Notes, are "statutory provisions of law for all purposes." *See* 19 U.S.C. § 3004(c)(1); *see also* Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1204(a) (stating that the HTSUS "consists of . . . chapters 1 to 99, and including all section and chapters notes[.]"). In implementing Section 301 duties, the President, through the USTR, modified the HTSUS under authority of Section 301 of the Trade Act of 1974 to add subheading 9903.88.46 and 9903.88.56 to the tariff

statute. *See id.* § 3004(c)(1)(C) (specifically referencing the Trade Act of 1974); *see also id.* § 2483. Under subheadings 9903.88.46 and 9903.88.56, only articles of China described by Notes 20(yy) and 20(iii) are subject to duty-free treatment. As explained above, the merchandise is not described by these notes. Rather, the merchandise is covered by Note 20(a) to Chapter 99. Note 20(a) provides that products classified in subheading 9903.88.01 "shall be subject to an additional 25 percent *ad valorem* rate of duty." Note 20(a), Ch. 99, HTSUS; *see* Note 20(b), Ch. 99, HTSUS (identifying subheading 8421.99.00 as subject to 25 percent duties).

Mitsubishi seeks a monetary award in the form of a refund in the amount of the Section 301 duties paid. But Mitsubishi's request would amount to a monetary award that would contravene the statutory requirements of the HSTUS that impose the Section 301 duties. *See Richmond*, 496 U.S. at 424 ("[T]he award [the plaintiff] seeks would be in direct contravention of the federal statute upon which his ultimate claim to the funds must rest."); *Doe*, 372 F. 3d at 1356 (holding that "statutory and regulatory requirements concerning the payment of money from the Treasury" equally binds the Court from providing relief on the basis of equitable estoppel).

Mitsubishi cannot rewrite the statute to obtain a refund of Section 301 duties, when those duties are required by law. Therefore, the doctrine of equitable estoppel cannot be used to order the Government to provide a refund contrary to the terms of the HTSUS.

* * *

Mitsubishi's equitable estoppel argument should thus be rejected.

## CONCLUSION

For these reasons, we respectfully request that the Court affirm the trial court's judgment.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

PATRICIA M. McCARTHY
*Director*

/s/ *Justin R. Miller*
JUSTIN R. MILLER
*Attorney-In-Charge*

*Of Counsel:*

MICHAEL A. ANDERSON
*Attorney, Office of the Assistant Chief
Counsel, International Trade Litigation
U.S. Customs and Border Protection*

MATHIAS RABINOVITCH
*Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
26 Federal Plaza, Suite 346
(212) 264-0484
mathias.rabinovitch@usdoj.gov*

February 13, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2026, I electronically filed the foregoing

brief with the Clerk of the Court for the United States Court of Appeals for the

Federal Circuit by using the appellate CM/ECF system.

/s/ *Justin R. Miller*
JUSTIN R. MILLER

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,488 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ Justin R. Miller
JUSTIN R. MILLER