*In the*

# United States Court of Appeals

*For the*

# Federal Circuit

MITSUBISHI POWER AMERICAS, INC.,
fka Mitsubishi Hitachi Power Systems Americas, Inc.,

*Plaintiff-Appellant,*

v.

UNITED STATES,

*Defendant-Appellee.*

———————————————

*Appeal from the United States Court of International Trade in Case Nos. 1:21-cv-00573-JAR,
1:22-cv-00102-JAR, 1:22-cv-00280-JAR and 1:23-cv-00271-JAR · Judge Jane A. Restani*

# APPELLANT'S REPLY BRIEF

ERIC ROCK, ESQ.
SERHIY KIYASOV, ESQ.
**ROCK TRADE LAW LLC**
134 North LaSalle Street, Suite 1800
Chicago, Illinois 60602
Telephone: (312) 824-6190
erock@rocktradelaw.com
skiyasov@rocktradelaw.com

*Attorneys for Appellant,
Mitsubishi Power Americas, Inc.*

April 17, 2026



# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES .......................................................................................... ii

REPLY SUMMARY ...................................................................................................... 1

I. The Government ignores facts that plainly establish that the elements of equitable estoppel are met. ....................................................................................... 5

    A. Mitsubishi was not "on notice" that exclusions did not cover subject merchandise; moreover, the Government knew about the classification dispute and decided to grant the exclusions to Mitsubishi, despite having several other options. .................................................................................. 7

    B. The Government's conduct led to an egregiously unfair result because it knew about the classification dispute and proceeded to grant the exclusions to Mitsubishi; thus, the Government engaged in affirmative misconduct. .......................................................................................... 13

    C. Mitsubishi reasonably relied on the USTR letters because they were responsive to individual products and clearly confirmed that Mitsubishi's requests were granted. .......................................................................... 17

    D. This Court is authorized to grant Mitsubishi a monetary remedy. ............ 20

II. In the alternative, the USCIT's finding that the exclusions should be applied to a portion of the SCR catalyst blocks should be enforced. ................................. 23

III. The SCR catalyst blocks are best classified under heading 3815 because they catalyze, but do not purify. ................................................................................. 24

    A. The SCR catalyst blocks are best classified under subheading 3815.19.00 ...................................................................................... 24

    B. The SCR system is not a purifier, therefore, the SCR catalyst blocks cannot be parts of purifiers under heading 8421 ..................................... 27

CONCLUSION .......................................................................................................... 31

# **TABLE OF AUTHORITIES**

**Cases:**

*Carbon Activated Corp. v. United States*, 791 F.3d 1312 (Fed. Cir. 2015). ............22

*Commins Inc. v. United States*, 454 F.3d 1361 (Fed. Cir. 2006)..............................26

*Franklin v. United States*, 289 F.3d 753 (Fed. Cir. 2002). .......................................28

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984) .....6

*JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348
    (Fed. Cir. 2000) .....................................................................................................30

*Masters Pharmaceutical, Inc. v. DEA*, 861 F.3d 206, 225 (D.C. Cir. 2017) .............6

*Noss Co. v. United States*, 588 F. Supp. 1408 (Ct. Int'l Trade 1984),
    *aff'd*, 753 F.3d 1052 (Fed. Cir. 1985). .................................................................29

*QMS, Inc. v. United States*, Court No. 92-02-00103, 1995 Ct. Intl. Trade LEXIS
    104, (1995). ...........................................................................................................30

*Shinyei Corp. of Am. v. United States*, 524 F.3d 1274 (Fed. Cir. 2008). .................22

**Statutes**

19 U.S.C. § 1515 ........................................................................................................21

28 U.S.C. § 1295(a)(5).............................................................................................6, 21

28 U.S.C. § 2643(a)(1)............................................................................................6, 21

**Other Authorities:**

*Catalysis*, Merriam-Webster, https://www.merriam-
    webster.com/dictionary/catalysis (last visited April 13, 2026)...........................28

*CBP Liquidation Bulletin*, https://trade.cbp.dhs.gov/ace/liquidation/LBNotice/....17

CBP, *Tariff Classification* (May 2004),
   *https://www.cbp.gov/sites/default/files/documents/icp017r2_3.pdf.* ...................15

EN 38.15 ...............................................................................................25

Exec. Order No. 11,021, 90. Fed. Reg. 18, 201 (April 2, 2026)............................23

Joseph Barloon, *Product Exclusion Request Number USTR-2019-0005-0951*,
   (October 23, 2019),
   https://comments.ustr.gov/s/requestdetails?rid=8323WVCHXG........................18

*Notice of Product Exclusions: China's Acts, Policies, and Practices Related to
   Technology Transfer, Intellectual Property, and Innovation*, USTR, 84 Fed. Reg.
   37, 381, 37, 381 (July 31, 2019). ......................................................................23

*Procedures for Requests To Exclude Certain Machinery Used in Domestic
   Manufacturing From Actions Pursuant to the Section 301 Investigation*, 89 Fed.
   Reg. 83,755 (Oct. 17, 2024)................................................................................12

*Procedures for Requests To Exclude Particular Products From the September 2018
   Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to
   Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576,
   29, 576 (June 24, 2019).......................................................................................9

*Procedures To Consider Requests for Exclusion of Particular Products From the
   Additional Action Pursuant to Section 301: China's Acts, Policies, and Practices
   Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed.
   Reg. 47, 236, 47, 236 (Sept. 18, 2018). ..................................................11, 15, 18

*Public Docket: Index and Status of Requests for Temporary Exclusion for
   Machinery Used in Domestic Manufacturing*, USTR,
   https://comments.ustr.gov/s/docket?docketNumber=USTR-2024-0020.............12

*Tariffs Exclusions Remain a Big Question for iRobot*, Int'l Trade Today,
   https://internationaltradetoday.com/article/2019/11/22/some-roomba-production-
   underway-in-malaysia-tariffs-exclusions-remain-a-big-question-for-irobot-
   1911220024?BC=bc_69dffe75ca51f ...................................................................16

U.S. Customs & Border Prot., *H331516* (June 21, 2023),
https://rulings.cbp.gov/ruling/H331516...................................................... 26, 27

U.S. Customs & Border Prot., HQ H250464 (Aug. 27, 2018),
https://rulings.cbp.gov/ruling/H250464................................................................12

U.S. Customs & Border Prot., HQ H319996 (April 10, 2023),
https://rulings.cbp.gov/ruling/221017................................................................12

U.S. Customs & Border Prot., NY N338981 (Mar. 27, 2024),
https://rulings.cbp.gov/ruling/N338981................................................................12

# REPLY SUMMARY

The Government misled Mitsubishi and wants this Court to ignore that fact. If the Government's arguments are taken at face value, it appears that the Government never planned to grant Mitsubishi the exclusions at issue, but it proceeded to tell Mitsubishi that its requests were granted anyway. Now, because of the Government's actions, Mitsubishi is impacted to the tune of tens of millions of dollars. The Government is wrong to point the finger elsewhere; Mitsubishi applied for the exclusions in good faith and received letters from the Government clearly granting exclusions, only to be denied them at entry. The Government must be estopped from preventing Mitsubishi from using the exclusions for its SCR catalyst blocks.

After learning about the process to request Section 301 China tariff exclusions, Mitsubishi submitted two exclusion applications. Each application was required to cover a single product. Mitsubishi's applications only spanned several pages, fully and concisely describing two of its products, SCR catalysts. To avoid misunderstandings, in each application, Mitsubishi confirmed that the catalysts were imported in block form in three separate places.

Two Government agencies reviewed Mitsubishi's exclusion applications: the United States Trade Representative ("USTR") and United States Customs and Border Protection ("CBP" or "Customs"). They acted together to grant the

exclusions in writing, based on Mitsubishi's applications. The USTR also updated its website to reflect the status of Mitsubishi's requests to "granted."

Mitsubishi, relying on the Government's written approval, imported certain SCR catalyst blocks; blindsiding Mitsubishi, the Government proceeded to apply Section 301 tariffs to those entries. Today, the Government insists that Mitsubishi was on notice that the exclusions apply to catalyst plates only, because there was an existing classification dispute, refusing to take accountability for its misleading conduct.

Mitsubishi was never "on notice." It only discovered the Government's refusal to apply the exclusions after certain SCR catalyst blocks were imported. The classification dispute cited by the Government as "notice" is misplaced here because it was ongoing, legitimate, and resulted in an administrative protest, despite the Government's claim that Mitsubishi failed to avail itself of administrative remedies.

The Government was aware that Mitsubishi disagreed with its proposed classification of the SCR catalyst blocks, well before the exclusion application window opened. On July 3, 2019, CBP issued a notice informing Mitsubishi that it disagreed with its classification of the SCR catalyst blocks under subheading 3815.19.00; it reliquidated the entry with a different subheading on September 27, 2019. Mitsubishi submitted its exclusion requests also on September 27, 2019, and its protest for the disputed entry on October 1, 2019. The USTR granted the

exclusions for the SCR catalyst blocks on May 4, 2020, and they were retroactive as of September 24, 2018. CBP denied Mitsubishi's protest on May 11, 2020.

Had Mitsubishi waited until the protest denial, it would not have been able to apply for an exclusion because the application window closed on September 30, 2019. The Government disregards that it knew about the classification dispute and could have denied the exclusion, just like it denied the protest. Mitsubishi and CBP were in regular contact. If there was truly any doubt as to whether Mitsubishi's descriptions of the products and classification agreed with one another, the Government could have simply denied the exclusion requests. It failed to do so and granted exclusions instead. In fact, CBP liquidated entries of SCR catalyst blocks under subheading 3815.19.0000 shortly before and after Mitsubishi filed its exclusion requests on September 27, 2019.

To be clear, no process for amending exclusion applications existed. This means that Mitsubishi could not have expected the USTR to change its application with an email. Rather, Mitsubishi took the only administrative remedy available: it filed a protest. As such, the USTR should have notified Mitsubishi if an issue with the exclusion applications existed, denied the applications, or suspended its decisions. The USTR did not. Instead, the USTR, in concert with CBP, granted exclusion applications.

Assuming, *arguendo*, that CBP's disagreement with Mitsubishi's classification was correct (which it was not), CBP and USTR acted in concert and in bad faith to grant exclusions that they never planned to apply at entry. Moreover, Mitsubishi disagreed with and, in good faith, actively disputed CBP's classification of its products, including the filing of an administrative protest, which was pending with CBP during its review of the exclusion applications. Knowing this, CBP and USTR could have communicated that the exclusions, as applied for, could not be granted. Again, this was not communicated to Mitsubishi and, instead, a letter granting exclusions was issued.

This case, above all else, is about fairness. It is unfair that the Government granted tariff exclusions, then came to collect the tariffs anyway when it was too late for the private party to mitigate. It is egregiously unfair for the private party to bear these costs when it acted in good faith and believed the Government did the same. Fairness will be restored if this Court reverses the USCIT's ruling and finds that equitable estoppel applies. Alternatively, fairness could be restored, in part, should this Court determine to enforce a partial application of the exclusions, as held by the USCIT; however, it would be most fair to Mitsubishi to find that the Government must keep its word and be equitably estoped from failing to apply the exclusions to the SCR catalyst blocks as a whole.

Finally, Mitsubishi maintains that the SCR catalyst blocks are properly classified under 3815.19.00 of the Harmonized Tariff Schedule of the United States ("HTSUS"), even though this does not impact the applicability of equitable estoppel. The SCR catalyst blocks promote a chemical reaction; this is not a "purification," as the Government asserts. The SCR catalyst blocks free no undesirable elements and no mass is gained or lost. To say that these products purify is wholly inaccurate; the SCR catalyst blocks—as their name suggests—*catalyze*. Heading 3815 plainly describes the SCR catalyst blocks' function, according to basic classification rules: "[r]eaction initiators, reaction accelerators and **catalytic preparations**." The SCR catalyst blocks must be classified as "other . . . supported catalysts" under 3815.19.00, because they are most adequately described at that level.

Thus, the Government's arguments fail on every front. Mitsubishi respectfully requests that this Court reverse the USCIT ruling, or, in the alternative, enforce its finding that the exclusions should partly apply to the SCR catalyst blocks.

I. **The Government ignores facts that plainly establish that the elements of equitable estoppel are met.**

The Government ignores that it was fully in control here and was, therefore, best positioned to avoid negative outcomes as to Mitsubishi. The party seeking to assert equitable estoppel must show: (1) a misrepresentation by the opposing party; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and

5

(3) detriment to the party asserting estoppel. *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 59 (1984). When estoppel is asserted against the government, the party must also show that its actions amounted to "affirmative misconduct," which was recently found to require "a showing of misrepresentation or concealment, or, at least, behavior that will cause an egregiously unfair result." *Id.*; *Masters Pharmaceutical, Inc. v. DEA*, 861 F.3d 206, 225 (D.C. Cir. 2017) (internal citations omitted). All of these elements have been met.

The Government's affirmative misconduct is clear: it knew about the classification dispute, granted the exclusions, then denied applying them, knowing that Mitsubishi would pay the bills. *See* Appx0002, Appx0089; Appx1023, Appx1035. This is an "egregiously unfair result." *Masters Pharmaceutical, Inc.*, 861 F.3d at 225. This Court is authorized to make Mitsubishi whole because it can order the USCIT to grant monetary remedies, including reliquidations. 28 U.S.C. § 2643(a)(1); 28 U.S.C. § 1295(a)(5). The Government falsely claims that Mitsubishi "assumed" that the Government approved its exclusion requests; Mitsubishi had the reasonable expectation that the Government would follow through on its agreements. Because the Government affirmatively misled Mitsubishi, inflicting substantial harm, it must be estopped from denying the exclusions to Mitsubishi.

**A.** *Mitsubishi was not "on notice" that exclusions did not cover subject merchandise; moreover, the Government knew about the classification dispute and decided to grant the exclusions to Mitsubishi, despite having several other options.*

Mitsubishi could not have known that the Government did not intend to apply the exclusions to its SCR catalyst blocks. This is because (1) it submitted the exclusion applications with complete information, (2) these exclusions were granted by the Government (on USTR letterhead), and (3) nowhere did the Government indicate that an exclusion could be "partially granted." Appx1013; Appx1025; Appx1023; Appx1035. Moreover, the Government was on notice of the classification dispute and best positioned to prevent negative outcomes. Simply put, Mitsubishi did its part and the Government did not.

Mitsubishi concisely provided all pertinent information about its SCR catalyst blocks in each exclusion application. Appx1013; Appx1025. The complete USTR forms were only approximately five pages long and contained a description of the SCR catalysts, specifying that they were imported in block form in three separate places in both application forms. Appx1013; Appx1025. These descriptions and corresponding subheading, 3815.19.00, were forwarded to CBP by the USTR, who expected CBP to review this information for administrability. *See* Appellee's Br. 37. CBP is the agency that determines the classification of articles.

By reviewing the exclusions for administrability, CBP determines if the HTSUS code is proper for the article as described in the resulting exclusion. *Id.* at 38. Thus, by confirming that Mitsubishi's exclusions were administrable, CBP informed the USTR that it agreed that subheading 3815.19.00 comported with the product descriptions in the exclusions, which were based on Mitsubishi's applications. This means that **CBP effectively told the USTR that exclusions can be applied to Mitsubishi's SCR catalysts imported in block form**. Mitsubishi received this same message of approval from the Government via the USTR letters, informing Mitsubishi that its requests for both products were "granted." Appx1023, Appx1035.

Mitsubishi had no reason to suspect that the exclusions would not be applied, or that they were limited in scope. The Government, citing a July 3, 2019, notice, erroneously insists that a classification dispute constitutes notice that the exclusions would not apply. Appellee's Br. 47. However, as the Government is aware, Mitsubishi actively disputed CBP's classification proposal through correspondence pre-dating the exclusion application window. Appx2144-2163.

Additionally, Mitsubishi submitted a protest in favor of classifying the SCR catalyst blocks under subheading 3815.19.00, on October 1, 2019, merely three business days after the entry was liquidated with Section 301 tariffs. Appx2116. Mitsubishi would not have been able to apply for exclusions if it waited, as the

exclusion application window closed on September 30, 2019. *Procedures for Requests To Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576, 29, 576 (June 24, 2019). Mitsubishi submitted its exclusion requests on September 27, 2019, and its protest for the SCR catalyst blocks on October 1, 2019. Appx1013; Appx1025. The exclusions were granted on May 4, 2020 (retroactively applied beginning September 24, 2018), and the protest was denied on May 11, 2020. Appx0002; Appx0089; Appx1023; Appx1035; 84 Fed. Reg. 29,576. Therefore, both review periods overlapped approximately seven months.

Since the protest review and exclusion review periods overlapped over months, the Government granted exclusions it knew it would never apply. Appx1013; Appx1025; Appx0002; Appx0089. Mitsubishi, in good faith, actively disputed CBP's assertion that the SCR catalyst blocks should be classified under a different subheading. Appx2144-2163; Appx2116. As such, Mitsubishi fully availed itself of all remedies available to it, including this litigation.

The Government was on notice of the classification dispute. If there were any disagreements about the classification of the Subject Merchandise, the Government had three options at its disposal: deny the exclusions, seek clarification from Mitsubishi, or suspend the determination of the exclusion applications.

Had the Government simply denied the exclusion requests, it would have clearly communicated its disagreement regarding the contents of Mitsubishi's exclusion applications. However, since the USTR forwarded the HTSUS code and product descriptions to CBP, it had all the information required to determine administrability. *See* Appx1013; Appx1025. Moreover, Mr. Gregory Connor, one of the Chief supervisors at CBP, knew about the classification dispute, at the latest, shortly after Mitsubishi submitted its exclusion requests on September 27, 2019; he was involved in the review of the Application for Further Review ("AFR") regarding the classification of Mitsubishi's SCR catalyst blocks which resulted from Mitsubishi's protest filed on October 1, 2019. Appx0670; Appx0824-0829 This means that Mr. Connor was involved in the review of the AFR during the pendency of the exclusion requests. Mr. Connor's involvement in and opinion on the classification predated the issuance of the exclusions. Appx0670; Appx0824-0829; Appx1013; Appx1025.

Mr. Connor was also on email chains with individuals from the USTR, as well as with those from CBP who were conducting administrability review of the exclusion applications, offering his own comments.[1] *See* Appx0836-0839. In fact, Mr. Connor acknowledged that the classification of Mitsubishi's SCR catalyst blocks

---

[1] Specifically, these emails covered exclusions for articles subject to "List 3" Section 301 tariff classifications, including those classified under subheading 3815.19.00, such as the SCR catalyst blocks. Appx0836-0839.

has been a "source of confusion in the past," indicating that he knew that there was a scope issue from CBP's perspective, and that Mitsubishi may enter their merchandise and not be able to use the exclusion. Appx0837-0840. However, this was not communicated to Mitsubishi. Therefore, the evidence is clear: the Government, having disagreed with Mitsubishi on the classification of the SCR catalyst blocks, was best positioned to avoid confusion and deny the exclusion requests; it simply chose not to.

The Government could have also asked Mitsubishi for clarification prior to granting its exclusion requests. Mitsubishi submitted each of its exclusion applications online. Appx1013; Appx1025. Mitsubishi provided, for each application, the submitter's name and email address. As discussed, Mitsubishi and CBP were also in contact before the exclusion application window opened. Appx2144-2163; Appx2116. Thus, the Government—both CBP and the USTR— had Mitsubishi's contact information and could have proactively clarified the classification, especially since **the Government established no process for amending exclusion applications**. *See Procedures To Consider Requests for Exclusion of Particular Products From the Additional Action Pursuant to Section 301: China's Acts, Policies*, 83 Fed. Reg. 47, 236, 47, 236 (Sept. 18, 2018).

Finally, the Government did not need to decide on the exclusion applications if it was uncertain about future impacts, especially given the classification dispute

known to it. This approach has been taken in other contexts within trade. Certain aging exclusion requests presently sit idle; the effective period for select exclusions that would have been approved closed May 31, 2025. *Compare Procedures for Requests To Exclude Certain Machinery Used in Domestic Manufacturing From Actions Pursuant to the Section 301 Investigation*, 89 Fed. Reg. 83,755 (Oct. 17, 2024) (effective dates), *with Public Docket: Index and Status of Requests for Temporary Exclusion for Machinery Used in Domestic Manufacturing*, USTR, https://comments.ustr.gov/s/docket?docketNumber=USTR-2024-0020 (showing exclusion applications at "Stage 2 – Under Review"). Moreover, CBP suspends protests and ruling requests pending the outcome of relevant litigation, or some other decision that could impact a determination. *See* U.S. Customs & Border Prot., NY N338981 (Mar. 27, 2024), https://rulings.cbp.gov/ruling/N338981 (circumstances in which rulings will not be issued); *see also* U.S. Customs & Border Prot., HQ H319996 (April 10, 2023), https://rulings.cbp.gov/ruling/221017 (protests suspended pending determination of lead protest); *see also* U.S. Customs & Border Prot., HQ H250464 (Aug. 27, 2018), https://rulings.cbp.gov/ruling/H250464 (liquidation suspended pending outcome of laboratory results). Thus, the Government had the option not to answer, rather than mislead Mitsubishi.

Since the Government failed to opt for any of the options above, Mitsubishi could not have been on notice. Mitsubishi anticipated—as any applicant would

have—that the Government would make it known if it did not intend to apply exclusions to its products. Moreover, the classification dispute could not have amounted to notice because Mitsubishi actively informed the Government that it believed that the SCR catalyst blocks were best classified under 3815.19.0000, as demonstrated by its responses to CBP correspondence and the protest it filed; there was no final determination as to the SCR catalyst blocks' classification. Appx2144-2163; Appx2116. Therefore, not only did the Government fail to give Mitsubishi notice that it planned to deny previously granted exclusions, it proactively misled Mitsubishi to believe that exclusions were granted.

**B.** ***The Government's conduct led to an egregiously unfair result because it knew about the classification dispute and proceeded to grant the exclusions to Mitsubishi; thus, the Government engaged in affirmative misconduct.***

The Government's willful misinterpretation of its own letters resulted in severe injustice toward Mitsubishi. Applying common sense, "[a]n exclusion in response to your request has been granted" can only mean that an exclusion will apply to the product that was the subject of the requestor's application. Appx1023, Appx1035. While the exclusions are covered by the exclusion language and not the applications themselves, if anything, the exclusion language covers a broader scope than the descriptions of the SCR catalyst blocks; moreover, there was no indication that the exclusions were more limited than the product descriptions in the

applications. *See* Appx1023, Appx1035. The language of the USTR letters presuppose that the exclusions apply to Mitsubishi's requests.

Moreover, no other importer could have taken advantage of these exclusions because, to the best of our knowledge, Mitsubishi was the only one who imported SCR catalyst blocks from China. Thus, contrary to the Government's claims, **these exclusions could only have been used for Mitsubishi's SCR catalyst blocks**. It defies logic that the Government granted exclusions for very specific products only requested by one particular importer, only to refuse them, such that it becomes impossible for anyone—but the Government—to benefit; in other words, the Government's collection of Section 301 tariffs here is an egregiously unfair result.

Egregious unfairness resulted from the USTR and CBP working in concert. They approved, and subsequently failed to apply, the exclusions granted to the SCR catalyst blocks. After requestors submitted applications, the USTR drafted the exclusions and forwarded them to CBP. Appellee's Br. 37. **Necessarily, the USTR drafted these exclusions in response to Mitsubishi's requests and with the SCR catalyst blocks in mind, because each exclusion was responsive to a request.**

The Government knew all facts material to Mitsubishi's exclusion applications—namely, that (1) the SCR catalysts are imported in block form and (2) that there was an ongoing classification dispute—yet, it granted the exclusions. *See* Appx1023, Appx1035. The Government does not deny that it knew about

Mitsubishi's October 1, 2019, protest at the time it reviewed the exclusion language forwarded by the USTR, because it cannot. *See generally*, Appellee's Br. Assuming, *arguendo*, that the Government did not have the information needed to reconcile Mitsubishi's applications with the exclusion language, it could have reached out to Mitsubishi; as indicated above, both the USTR and CBP had Mitsubishi's contact information. Appx2144-2163; Appx2116; Appx1013; Appx1025. **To be clear, the onus was never on Mitsubishi to try to amend its applications because there was no process to do so.** *See* 83 Fed. Reg. 47, 236.

The Government states that Mitsubishi could have sent an email to "clarify" the classification issue, however, there is an established processes for determining classification, and it does not include sending an isolated email. Appellee's Br. 43; CBP, *Tariff Classification* (May 2004), *https://www.cbp.gov/sites/default/files/documents/icp017r2_3.pdf* (describing formal processes for determining classification, including protests, not informal correspondence). Mitsubishi followed this process exactly by filing a protest. The Government, however, failed to seek any sort of clarification, and CBP ultimately determined the exclusions to be administrable. Appellee's Br. 38.

By deeming exclusion language meant for the SCR catalyst blocks as administrable, CBP knew or should have known that the USTR would have informed Mitsubishi that its requests were granted, and that CBP would refuse to apply those

exclusions to Mitsubishi's entries. Moreover, the Government must know that members of the trade community who applied for product-specific exclusions and received approvals indicating that those applications were granted expected to be able to use them. *See Tariffs Exclusions Remain a Big Question for iRobot*, Int'l Trade Today, https://internationaltradetoday.com/article/2019/11/22/some-roomba-production-underway-in-malaysia-tariffs-exclusions-remain-a-big-question-for-irobot-1911220024?BC=bc_69dffe75ca51f (reporting that iRobot "is still waiting to hear about possible exclusions to [List 3] Section 301 tariffs").

The Government likewise must have known that, by failing to apply the granted exclusions that it had a hand in approving, Mitsubishi would be harmed and the enormous magnitude of that harm. Again, CBP knew about the dispute, and reviewed entries for previously entered SCR catalyst blocks. *See* Appx2144-2163; Appx2116. Thus, the Government knew that failing to apply the exclusions—while communicating that they were granted—would result in Mitsubishi paying tens of millions of dollars in Section 301 tariffs it could not foresee. As discussed above, the Government had the options of denying the applications, asking for further information from Mitsubishi, or suspending its decisions; the Government opted for none of them. Clearly, the Government's conduct was more than misleading; it yielded egregiously unfair results, and, therefore, amounted to affirmative misconduct.

**C.** ***Mitsubishi reasonably relied on the USTR letters because they were responsive to individual products and clearly confirmed that Mitsubishi's requests were granted.***

The Government is dismissive toward its unmistakable role in harming Mitsubishi, who reasonably relied on the Government's affirmative misconduct. Mitsubishi trusted that, if the Government determined that the SCR catalyst blocks should be granted exclusions, those exclusions would be clearly communicated and applied. Mitsubishi thus relied on the USTR letters, the USTR exclusions portal, and the underlying exclusions process. *See* Appx1023, Appx1035. This reliance was reasonable because the Government was the authority on the exclusions process; moreover, CBP liquidated entries of SCR catalyst blocks under subheading 3815.19.0000 shortly before and after Mitsubishi filed its exclusion requests on September 27, 2019.[2] Mitsubishi had no reason to question whether the Government would follow through on the granted exclusions because its outward expressions indicated that it would.

The exclusions process established by the Government was designed to be relied upon by importers. The Government instituted this process when, during a notice and comment period, "a number of interested persons" indicated, in part, that specific products were only available from China and that placing Section 301 tariffs

---

[2] Entry FY120475295 liquidated on June 14, 2019, and Entry FY120492811 liquidated on January 31, 2020. *See CBP Liquidation Bulletin*, https://trade.cbp.dhs.gov/ace/liquidation/LBNotice/.

on those specific products would cause severe harm to a U.S. interest. 83 Fed. Reg. 47, 236, 47, 236 (Sept. 18, 2018). The exclusions process was, therefore, responsive to importers who expressed concerns about how Section 301 tariffs would adversely impact them, and was intended to ease those concerns.

As discussed in our opening brief, the procedures were published on the Federal Register on June 24, 2019, and included factors the Government considered when determining whether it should grant a requested exclusion. Appellant's Br. 6-7. The Government, after conducting thorough internal reviews of each product, would grant or deny the exclusions. *See, e.g.*, Joseph Barloon, *Product Exclusion Request Number USTR-2019-0005-0951*, (October 23, 2019), https://comments.ustr.gov/s/requestdetails?rid=8323WVCHXG (attached letter informing applicant of exclusion denial after "careful consideration" and "in accordance with the factors" of the June 24, 2019, exclusion procedures notice); *see also* Appellant's Br. 7-7, 42-43 (USTR and CBP working in concert and administrability review). Notably absent from these instructions is any indication that the Government could "partially" grant exclusions.

The USTR notified applicants and the public of an exclusion being granted by sending letters, posting them online, and updating the USTR portal to reflect an application as "granted." Appellant's Br. 24-28. Thus, the Government created a highly structured process where it analyzed individual products on a micro level, and

outwardly communicated that it would use this process to communicate whether importers could benefit from certain exclusions; in other words, the public was aware that the Government was in complete control of the entire process and that the resulting communications—including letters signed by Joseph Barloon, the USTR's General Counsel at the time—were authoritative.

Mitsubishi reasonably relied on the exclusions process developed by the Government and the resulting communications. Mitsubishi trusted that, if it followed the Government's published procedures, it would receive an affirmative response; it was this reasonable belief that influenced its business decision to continue to import SCR catalyst blocks. Again, **CBP liquidated entries of SCR catalyst blocks under subheading 3815.19.0000 shortly before and after Mitsubishi filed its exclusion requests on September 27, 2019**. Thus, logically, Mitsubishi also expected that, if its exclusion applications were approved, the Government would apply the exclusions, rather than deny and actively resist them, as it does here.

Moreover, Mitsubishi knew that it was well-positioned, compared with other applicants, to obtain exclusions because the Government's factors weighed in favor of approval. In fact, the Government's communications agreed on their face; Joseph Barloon's letters and the USTR portal indicated that Mitsubishi's requests were granted. As discussed above, the Government did not deny the exclusions, reach out to Mitsubishi for more information, or suspend its decisions, thus Mitsubishi

reasonably believed that there was no issue. It defies common sense to argue that Mitsubishi should have doubted the Government when it said, directly and after a full review of each specific product, that the exclusions it requested were granted.

Finally, the Government again tries to mislead this Court. It is well aware of how much Mitsubishi has paid in Section 301 duties, down to the penny, because CBP collected them. Additionally, Mitsubishi can only self-source the SCR catalyst blocks because it has patents on these products. In its exclusion applications, Mitsubishi explained why it was unable to source SCR catalyst blocks from third countries at the time, but, as explained in our opening brief, Mitsubishi *could have* continued to explore outside sources had it known that the Government never intended to apply the exclusions. Appellant's Br. 47.

Thus, because the Government established the exclusion process, determined which products could benefit from Section 301 tariff exclusions, and communicated to all—including Mitsubishi—that Mitsubishi's requests were granted, Mitsubishi's reliance on the Government was entirely reasonable; as the Government well knows, this reasonable reliance harmed Mitsubishi substantially.

### D. *This Court is authorized to grant Mitsubishi a monetary remedy.*

This Court is empowered to ensure a just outcome in this litigation by ordering that the USCIT provide a monetary remedy to Mitsubishi, including reliquidating relevant entries. The Government is wrong to suggest otherwise. As the Government

is aware, this case was timely filed pursuant to Section 515 of the Tariff Act of 1930, after having filed timely protests. 19 U.S.C. § 1515; Appx2116. Thus, prior to reaching this Court, the USCIT had jurisdiction over this case pursuant to 28 U.S.C. § 1581(a), which provides that the "[USCIT] shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest . . . under section 515 of the Tariff Act of 1930." Appx0004.

Congress specifically authorized money judgments against the United States "in ***<u>any</u> civil action commenced under section 1581*** . . . of [Chapter 28 of the United States Code]." 28 U.S.C. § 2643(a)(1) (emphasis added). The USCIT may enter such relief, including reliquidation of relevant entries. *Id.* Additionally, this Court has exclusive jurisdiction of appeals from final decisions of the USCIT. 28 U.S.C. § 1295(a)(5). Therefore, this Court may reverse the USCIT's ruling and instruct it to issue monetary relief (or, in the alternative, enforce its finding in favor of a partial application of the exclusions).

A money judgment here is apropos. Case law supports monetary relief when interagency actions result in injustice against a private party. In *Shinyei Corp. of Am. v. United States*, an antidumping case, the plaintiff partly alleged that the Department of Commerce gave erroneous instructions to CBP; in turn, CBP liquidated certain entries at a much higher *ad valorem* rate than provided by the Amended Review Results, which Commerce previously determined were applicable to those entries.

21

524 F.3d 1274, 1277-78 (Fed. Cir. 2008). This Court reversed the USCIT's ruling and remanded, commenting that "[i]f there was an error in the instruction process, then [plaintiff] is entitled to a judgment ordering reliquidation." *Id.* at 1284.[3]

The Government's conduct here is far more appalling than that discussed in *Shinyei*; in this case, the Government issued letters, individually and for each product, specifically informing Mitsubishi that its requests were granted, yet CBP refused to apply the exclusions, even though it previously found them to be administrable.[4] Appellee's Br. 40. This is more pronounced than its conduct in *Shinyei*, where the Government provided more generalized instructions applicable to many importers.[5] *Shinyei Corp. of Am.*, 524 F.3d at 1277. Moreover, the SCR catalyst blocks are properly classified under subheading 3815.19.00, HTSUS, and thus are wholly described by the exclusions. Appellant's Br. 57-63. Mitsubishi, in good faith, attempted to resolve this matter by filing a protest, to no avail; it now urges this Court to use its authority under 28 U.S.C. § 1295(a)(5) to enable the USCIT to rectify the profound unfairness directed at Mitsubishi.

---

[3] This Court has also demonstrated a willingness to provide monetary relief in cases with similar facts, where, had the plaintiff filed a protest, the USCIT would have had jurisdiction under 19 U.S.C. § 1514. *See Carbon Activated Corp. v. United States*, 791 F.3d 1312, 1313-15 (Fed. Cir. 2015) ("If Customs denies the protest . . . [t]he Trade Court can in that case provide the appropriate remedy.").

[4] The USTR also indicated that each request was granted on its public portal.

[5] As discussed above, the exclusions can only apply to Mitsubishi's products, because it has a patent and is the sole importer of SCR catalyst blocks.

**II. In the alternative, the USCIT's finding that the exclusions should be applied to a portion of the SCR catalyst blocks should be enforced.**

If this Court disagrees that equitable estoppel applies, Mitsubishi urges this Court to enforce the USCIT's determination that the exclusions should apply to part of the SCR catalyst blocks. Contrary to the Government's arguments, there is growing support for this approach in the law and in trade.

Mitsubishi does not dispute well-established classification principles, such as the General Rules of Interpretation. However, the USTR was clear: "**the exclusions are available for any product that meets the description in the Annex**." *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, USTR, 84 Fed. Reg. 37, 381, 37, 381 (July 31, 2019). Partial applications for certain tariff treatment have already been addressed in the opening brief. Appellant's Br. 55-56. However, recent developments only strengthen Mitsubishi's position; the Section 232 tariffs applied to steel, copper, or aluminum derivative products, for example, contain a *de minimis* exemption, and the Executive Order further clarifies that if tariffs apply to one metal, they will not be double-applied. See Exec. Order No. 11,021, 90. Fed. Reg. 18, 201 (April 2, 2026).

Moreover, the USCIT found that "Supported [C]atalysts on a mesh plate [i.e., catalyst plates] may be excluded from 301 duties." Appx0018. The exclusion language is also broader than the product descriptions provided in Mitsubishi's

applications. *See* Appx1013; Appx1025. Thus, at a minimum, the exclusion must be applied to the SCR catalyst blocks' plates; however, as established by the USTR, the SCR catalyst blocks need only fall within the product descriptions, therefore a complete application of the exclusions is far more just and appropriate.

## III. The SCR catalyst blocks are best classified under heading 3815 because they catalyze, but do not purify.

The SCR catalyst blocks are best classified under subheading 3815.19.00 because, as discussed in Mitsubishi's opening brief, they are most specifically provided for in that subheading. Appellant's Br. 57-62. Following the General Rules of Interpretation ("GRIs"), heading 8421 cannot best describe Mitsubishi's products. Moreover, contrary to the Government's arguments, Explanatory Note ("EN") to heading 3815—EN 38.15—supports Mitsubishi's position. Finally, Mitsubishi must highlight the USCIT's misapplication of the obsolete "more than" doctrine. Plainly, the SCR catalyst blocks are not purifiers and thus cannot be classified under heading 8421.

### A. The SCR catalyst blocks are best classified under subheading 3815.19.00.

Mitsubishi's SCR catalyst blocks should be classified under subheading 3819.19.00, as indicated by the applicable rules when correctly applied. *See* Appellant's Br. 62-63 (applying GRIs). The Government relies on EN 38.15, however, this guidance cuts against its argument. Moreover, the miscellaneous

components (steel frame, protector, seal bars, etc.) should not impact the SCR catalyst blocks' classification, as supported by a previous CBP Headquarters ruling. Therefore, heading 8421 should not be considered in the SCR catalyst blocks' classification.

The Government cites the Explanatory Note 38.15 in its brief, taking the position that it supports its erroneous view that the SCR catalyst blocks are not classified under heading 3815; not so. EN 38.15 states "[t]his heading covers preparations which initiate or **accelerate certain chemical processes**" (emphasis added). EN 38.15 further describes two groups of these preparations, including a group of preparations that:

> are, in general, composed either of **one or more active substances deposited on a support (known as "supported catalysts")** or of mixtures with a basis of active substances. **In the majority of cases, these active substances are certain metals, metallic oxides, other metallic compounds or mixtures thereof.** The metals most frequently used as such or as compounds are cobalt, nickel, palladium, platinum, molybdenum, chromium, copper or zinc. **The support, sometimes activated, generally consists of** alumina, carbon, silica gel, siliceous fossil meal or **ceramic materials**. Examples of "supported catalysts" are supported Ziegler or Ziegler-Natta types.

EN 38.15 (emphasis added). Heading 3815 does not include (1) spent catalysts used for extracting base metals or manufacturing chemical compounds of base metals, (2) separate chemically defined compounds, (3) catalysts consisting of metals or alloys in the form of finely divided powder, woven gauze, etc., and (4) prepared rubber accelerators used in the vulcanization of rubber. *Id.*

Not only do the GRIs support Mitsubishi's position that its SCR catalyst blocks are best classified under subheading 3815, but EN 38.15 further confirms this fact. *See* Appellant's Br. 62-63 (applying GRIs). Molybdenum is used as an active component of the subject SCR Catalyst Blocks. Appx0106. The titania-based support of the SCR catalyst blocks is similar to that of alumina and is a "ceramic material." Appx0106. Further, there are significant similarities between the SCR catalyst blocks and Ziegler/Ziegler-Natta catalysts. Appx0106-0107. Therefore, the SCR catalyst blocks are clearly at home within heading 3815.

Additionally, the miscellaneous components (steel frame, protector, etc.) should not impact the SCR catalyst blocks' classification. CBP has previously classified products based on the compound contained within metal support, rather than the compound in the container separately.[6] U.S. Customs & Border Prot., *H331516* (June 21, 2023), https://rulings.cbp.gov/ruling/H331516. In ruling H331516, CBP determined that compressed carbon dioxide ($CO_2$) gas enclosed in steel cylindrical cartridges, used in air guns, were classified under heading 2811 ("[o]ther inorganic acids and other inorganic oxygen compounds of nonmetals"), rather than heading 9306 ("cartridges and other ammunition and projectiles and parts thereof"). Entire cartridges were disposed of when the $CO_2$ was depleted. *Id.* There,

_____

[6] Although CBP rulings are not binding on this Court, they are offered deference in proportion to their persuasiveness. *Commins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (*citing Skidmore v. Swift & Co.*, 363 U.S. 134 (1944)).

CBP applied GRI 1, declining to consider classifying the product under 9306, commenting that "[the cartridges] are mere cylinders that store energy in the form of compressed $CO_2$)." *Id.*

Similarly, the miscellaneous components merely store the catalyst plates. As described in Mitsubishi's opening brief, these materials are only intended to hold catalyst plates in place during shipping and installation. Appellant's Br. 31. When the SCR catalyst blocks have been depleted, like the cartridges in H331516, they are entirely removed and disposed. Again, these materials offer the easiest and most appropriate, practical container for these plates. Thus, the miscellaneous materials likewise should not impact the SCR catalyst blocks' classification.

### B. *The SCR system is not a purifier, therefore, the SCR catalyst blocks cannot be parts of purifiers under heading 8421.*

Any consideration of classifying the SCR catalyst blocks under heading 8421 should be disregarded. The USCIT erred in its assertion that the SCR system is a purifier and that the SCR catalysts blocks are, by extension, parts of purifiers. Appx0013-0014. However, as the USCIT correctly determined, the SCR system's function is to chemically convert gases. Appx0012. This chemical conversion is not a removal (chemical or physical); therefore, the SCR system cannot be said to be a purifier, and the SCR catalyst blocks cannot be classified as parts of purifiers. *See* Appellant's Br. 59-62.

As the Government admits, the SCR catalyst blocks *catalyze*; but they do not purify. *See* Appellee's Br. 10-11; *see also* Appellant's Br. 4 . A catalysis is "a modification and **especially increase in the rate of a chemical reaction** induced by material unchanged chemically at the end of the reaction." *Catalysis*, Merriam-Webster, https://www.merriam-webster.com/dictionary/catalysis (last visited April 17, 2026). In contrast, as understood by the USCIT, to purify means "to free from undesirable elements." Appx0011-0012 (citing Merriam-Webster). The USCIT relies upon the latter definition in error because it is fundamentally different from the SCR catalyst blocks' functions, and therefore could not possibly describe them according to GRI 1. *See* Appellant's Br. 59-63. To avoid doubt, the only function of the SCR catalyst blocks is to facilitate a chemical reaction, therefore, they cannot be classified under a heading for purifiers. Appx0087.

The cases offered by the Government in support of its false contention that the SCR catalyst blocks are "purifiers" are easily distinguishable. *Franklin v. United States* addresses an entirely different product than the SCR catalyst blocks: coral sand packets. 289 F.3d 753 (Fed. Cir. 2002). However, coral sand does not return to its original form after the reaction. *Id.* at 755 (describing the addition of ions and a percentage of the product going into the solution, but no discussion of the sand returning to its original form). Therefore, these sand packets cannot be said to engage in catalysis. *See Catalysis*, Merriam-Webster. In contrast, the SCR catalyst blocks

promote chemical reactions and return to their original form once complete. Appx0087. *Noss Co. v. United States* is even further distinguishable because the subject merchandise were centrifugal cleaners that were designed to remove contaminants from wood pulp. 588 F. Supp. 1408 (Ct. Int'l Trade 1984), *aff'd*, 753 F.3d 1052 (Fed. Cir. 1985). The centrifugal cleaners did not promote chemical reactions, but physically removed contaminants. Further, the cleaners were analyzed under the Tariff Schedules of the United States (TSUS), which has since been replaced by the HTSUS. *Id.* Thus, neither *Franklin* nor *Noss* can serve to misclassify Mitsubishi's SCR catalyst blocks under heading 8421.

Additionally, the USCIT erroneously conflated the SCR system with catalytic converters intended for vehicles, finding them to be purifiers despite the fact that each product involves "fundamentally different chemical reactions." Appx0013. This resulted in an incorrect finding that the SCR catalyst blocks are parts of purifiers, rather than correctly classifying them as catalytic preparations under subheading 3815.19.00, HTSUS. Appx0013; *see* Appellant's Br. 62-63. The SCR system does not purify because it does not remove "undesirable elements," as its function is to chemically convert gases. *See* Appx0240-0042.

Despite the Government's insistence, this result is absurd because products that are fundamentally different offer poor support for each other's classification. *See QMS, Inc. v. United States*, Court No. 92-02-00103, 1995 Ct. Intl. Trade LEXIS

104, (1995) (finding that ink sheet rolls neither intended nor capable of use with a typewriter "are plainly not typewriter ribbons"). SCR systems—incorporating SCR catalyst blocks—use ammonia, promoting an entirely different reaction than that found in catalytic converters; specifically, no reagent is added to catalytic converters. *Id.*; Appx0208. Thus, a catalytic converter cannot be compared to the SCR systems—unique and fundamentally different products—to misclassify SCR catalyst blocks.

Finally, the Government offers no support when it states that the trial court did not invoke the "more than" doctrine; the USCIT's use of this obsolete doctrine is apparent because it used the doctrine to find that the SCR catalyst blocks were not classified under subheading 3815.19.00. The USCIT specifically stated that "[s]upported catalysts on a mesh plate may be excluded from 301 duties, ***but the product at issue is more than that***." Appx0018 (emphasis added). The GRIs contain no such language. *See JVC Co. of Am., Div. of US JVC Corp. v. United States*, 234 F.3d 1348, 1354 (Fed. Cir. 2000) (finding that the GRIs supplant the "more than" doctrine). Thus, Mitsubishi reasserts that it is the GRIs that govern classification, and not the more than doctrine. *See* Appellant's Br. 33. The "more than" doctrine cannot be applied to find that the SCR catalyst blocks are classified in any other heading than 3815.

## CONCLUSION

For all the foregoing reasons, Mitsubishi respectfully requests that this Court reverse the opinion and judgment of the USCIT and hold that the government must be equitably estopped from denying the application of the subject China Section 301 tariff exclusions to the Subject Merchandise. Alternatively, Mitsubishi respectfully requests that this Court enforce the opinion and judgment of the USCIT and hold that the subject China Section 301 tariff exclusions apply, at a minimum, to Supported Catalyst plates and that subject entries be reliquidated with appropriate refunds.

Respectfully submitted,

/s/ Eric R. Rock
Eric R. Rock
*Counsel of Record*
Serhiy Kiyasov
*Attorney*
ROCK TRADE LAW, LLC
134 N. LaSalle St., Ste 1800
Chicago, IL 60602
erock@rocktradelaw.com

*Attorneys for Plaintiff-Appellant*

April 17, 2026

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Circuit Rule 32-1(a) and Federal Rules of Appellate Procedure 32(a)(5)(A).  This brief uses a proportional typeface and 14-point font, and contains 6,912 words.

Respectfully submitted,

/s/ Eric R. Rock
Eric R. Rock
*Counsel of Record*
Serhiy Kiyasov
*Attorney*
ROCK TRADE LAW, LLC
134 N. LaSalle St., Ste 1800
Chicago, IL 60602
erock@rocktradelaw.com

*Attorneys for Plaintiff-Appellant*

April 17, 2026